**In re PHAR–MOR, INC. SECURITIES LITIGATION.**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PHAR–MOR, INC. and Fifteen Affiliated Companies, Plaintiffs,**

v.

**ACTION INDUSTRIES, INC., et al., Defendants.**

Civ. A. Nos. 92–1938, 94–2077.
MDL No. 959.
Master No. Misc. 93–96.

United States District Court,
W.D. Pennsylvania.

March 7, 1995.

Harry W. Greenfield, Cleveland, OH, for plaintiffs.

Richard G. Hardy, Cleveland, OH, for defendants.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court is the motion of defendant, Irving Z. Friedman, Executor of the Estate of Stanley Rothenfeld ("defendant" or "executor"), for summary judgment. The motion presents an issue of first impression, to-wit, whether Ohio's nonclaim statute, § 2117.06 of the Ohio Revised Code, which bars all noncontingent claims against an estate that are not presented within one year of the decedent's death, is preempted by 11 U.S.C. § 546, which gives the trustee of a bankruptcy estate two years after appointment to commence an adversary action.

This action arises out of the financial fraud that occurred at Phar–Mor, Inc., a deep discount drugstore chain. On August 17, 1992, after disclosing that certain of its employees had engaged in the fraud, Phar–Mor filed for protection under Chapter 11 of the Bankruptcy Code. The bankruptcy proceedings are currently pending in the United States Bankruptcy Court for the Northern District of Ohio. In addition to the bankruptcy case, numerous civil actions have been filed in various federal and state courts by creditors and shareholders of Phar–Mor against Phar–Mor's former auditors and others. Nearly all of these actions have been transferred or are being transferred to this court by the Judicial Panel on Multidistrict Litigation for coordinated pretrial proceedings.

The instant action was initiated by the Official Committee of Unsecured Creditors of Phar–Mor, Inc. and Fifteen Affiliated Companies (the "Committee") on August 16, 1994 as an adversary proceeding in the Ohio bankruptcy court. The litigation stems from a tender offer that Phar–Mor made for shares of its stock in 1992. The defendants in this action were shareholders of the company who participated in the tender offer and sold shares back to Phar–Mor. The Committee seeks to avoid and recover from defendants, including Stanley Rothenfeld, approximately $72 million paid to them by Phar–Mor. Rothenfeld tendered 6,274 shares of stock

and received a payment of $153,336.56. The Committee contends that the stock repurchase payments constitute fraudulent transfers under sections 548 and 550 of the Bankruptcy Code and, under section 544 of the Code, which applies relevant state fraudulent conveyance laws.

Rothenfeld died on February 18, 1993, approximately six months after Phar–Mor's bankruptcy filing, and Irving Z. Friedman was appointed executor of the estate. The Committee was not notified of Rothenfeld's death until defendant filed the instant motion, and the Committee did not present its claim to the estate or otherwise notify the estate of its claim until the complaint was filed on August 16, 1994, over one and one-half years after Rothenfeld's death.

Defendant has moved for summary judgment on the basis that the claims against Rothenfeld's estate are barred by the Ohio nonclaim statute. The statute provides, in relevant part, as follows:

> (B) All claims shall be presented within one year of the death of the decedent, whether or not the estate is released from administration or an executor or an administrator is appointed during that one-year period. Every claim presented shall set forth the claimant's address.
>
> (C) A claim that is not presented within one year after the death of the decedent shall be forever barred as to all parties, including but not limited to, devisees, legatees, and distributees. No payment shall be made on the claim and no action shall be maintained on the claim, except as otherwise provided in §§ 2117.37 to 2117.42 of the Revised Code, with reference to contingent claims.

O.R.C. § 2117.06. Because Rothenfeld died on February 18, 1993, defendant contends that the Committee's action against the estate is barred by the state statute.

The Committee rejoins that the nonclaim statute is inapplicable because it conflicts with § 546 of the Bankruptcy Code, which provides a two-year statute of limitations for commencement of adversary actions. Moreover, the Committee argues that application of the state statute under these circumstances would violate due process. We will initially address the Committee's preemption argument.

In *California Federal Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987), the Supreme Court set forth the analysis for determining the appropriateness of federal preemption. The Court stated that:

> In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress. Federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. Second, congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation....
>
> As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs either because compliance with both federal and state regulations is a physical impossibility, or because the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Nevertheless, pre-emption is not to be lightly presumed.

479 U.S. at 280–81, 107 S.Ct. at 689 (citations and internal quotations omitted).

We hold that Congress did not, in enacting the Code, expressly or impliedly pre-empt state law. Indeed, it has been said that the "Code was written in the shadow of state law [and] Congress intended state law to fill the interstices." *In the Matter of Estate of Medcare HMO,* 998 F.2d 436, 441 (7th Cir.1993) (citing *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979); *Matter of Roach,* 824 F.2d 1370 (3d Cir. 1987)); *see also, BFP v. Resolution Trust Corp.,* —— U.S. ——, ——, 114 S.Ct. 1757,

1765–66, 128 L.Ed.2d 556 (1994) ("The Bankruptcy Code can of course override [state law] by implication when the implication is unambiguous. But where the intent to override is doubtful, our federal system demands deference to long established traditions of state regulation.") (brackets supplied). Therefore, the Committee must establish that the third part of the *Guerra* analysis supports preemption because it is either (1) impossible to comply with both the Ohio nonclaim statute and section 546, or (2) the application of the state nonclaim statute presents "an obstacle to the execution of the full purposes and objectives of Congress." 479 U.S. at 281, 107 S.Ct. at 689.

■ In determining whether preemption is appropriate here, we must be mindful that "federal preemption of state law is not favored. This is particularly true in areas of law traditionally dominated by the individual states." *Witco Corp. v. Beekhuis*, 38 F.3d 682, 687 (3d Cir.1994). In *Witco*, the Court of Appeals further stated that:

> In an area that has been traditionally occupied by the states, the court must assume that the prerogatives of the states were not to be superseded by a federal law unless it is the clear and manifest purpose of Congress. Indeed, for preemption to occur in a field traditionally occupied by the states, there must be a 'sharp' conflict between state law and federal policy. Since probate matters traditionally have been nearly the exclusive concern of the states, there is a presumption against preemption of state law.

*Id.* (citations omitted).

■ The Committee does not dispute that it could have complied with both the Ohio nonclaim statute and section 546 of the Code under the circumstances of this case. Because Rothenfeld died on February 18, 1993, the Committee had until February 17, 1994, one and one-half years after the commencement of the bankruptcy proceedings, to present its claim against the estate. Moreover, because the nonclaim statute does not require that the claim be presented in the form of a legal complaint and requires only that the estate be notified of the claim, the Committee was not obligated to expedite the filing of the complaint before the expiration of the one-year period. We hold that the nonclaim statute did not conflict with the federal statute of limitations under these circumstances.

■ We also hold that the nonclaim statute does not present an obstacle to the objectives of Congress in enacting the Bankruptcy Code. We recognize that the two-year period provided to trustees under section 546 was designed to give "the trustee some breathing room to determine what claims to assert under § 544," *In re Drywall Supply, Inc.*, 111 B.R. 933, 936 (D.Colo.1990), and that the application of a shorter state statute of limitations could lessen the ability of the trustee to recover property for the benefit of the bankrupt estate. The Committee contends that defendant's position is clearly contrary to the intent of Congress and urges that we adopt the holdings of two federal courts which have concluded that section 546 overrides state statutes that shorten the period provided by federal law. *See, In re Drywall Supply, supra; In re Hansen*, 114 B.R. 927 (Bkrtcy.N.D.Ohio 1990).

In the face of the Supremacy Clause, we would be inclined to agree with the Committee were it not for the fact that the cases relied upon by the Committee deal with the application of a general state statute of limitations whereas, in the instant case, the statute in question is a nonclaim statute. While the former serves merely to protect a party from stale claims and is not wrapped up in traditional state regulation, the latter implicates not only the state's traditional right to regulate probate matters, but also the right to determine the capacity of its citizens to be sued.

In *Witco*, the Court of Appeals was faced with a similar conflict between a federal statute of limitations, the three-year limitations period provided for claims brought under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, and Delaware's nonclaim statute. After concluding that Congress did not expressly or impliedly intend to overrule the Delaware statute, and that the plaintiff could have complied with both laws, the

Court emphasized that "[the Delaware statute] is not merely a general statute of limitations, but instead is characterized as a 'nonclaim' statute. The purpose of the nonclaim statute is not the same as a general statute of limitations which merely seeks to avoid stale claims. Rather, prompt distribution of the assets is the ultimate goal of the statute." *Witco*, 38 F.3d at 690 (citations and internal quotations omitted).

■ A nonclaim statute forever terminates the estate's capacity to be sued, regardless of the cause of action asserted. *Id.* Congress, in enacting the Bankruptcy Code, expressly left to state law the determination of an individual's capacity to be sued in adversary proceedings by incorporating Fed.R.Civ.P. 17 into the bankruptcy scheme.[1] Rule 17(b) provides, in relevant part, that the "capacity of an individual ... to sue or be sued shall be determined by the law of the individual's domicile." In light of this specific provision in the Bankruptcy Code, we submit that preemption would be inappropriate even if we were to conclude that the nonclaim statute is in conflict with section 546.

We hold that Ohio's nonclaim statute is not preempted by section 546. Therefore, the nonclaim statute bars the Committee's claims against the estate because the Committee failed to present the claim within one year of Rothenfeld's death. In so holding, we note that, under different circumstances (such as where a decedent dies before the bankruptcy proceedings commence), the application of the nonclaim statute could severely limit the period of time during which a trustee could assert a claim against an Ohio estate. In spite of this possibility, we find preemption to be inappropriate because we cannot discern a "clear and manifest" intention on the part of Congress to override the state's strong and traditional interest in regulating the probate matters of its citizens.

■ Our holding that the nonclaim statute is not preempted does not completely resolve the matter at hand. The Committee argues that even if the nonclaim statute is applicable to this action, the application would violate due process because the Committee was not notified of Rothenfeld's death. The Committee contends that defendant's failure to give it actual notice of the death violates the due process clause of the Constitution, based on the holding in *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).

We disagree. In *Pope*, the Court relied on the principle of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to-wit, that state action which adversely affects property interests must be accompanied by such notice as is reasonable under the circumstances. At issue in that case was an Oklahoma nonclaim statute which required the trustee, immediately after court appointment, to give notice of the probate proceedings to the creditors of the deceased. The statute permitted notice by publication. Creditors were required to present their claims against the estate within two months of the first publication of the notice.

In holding that the plaintiff had failed to satisfy the notice requirements of *Mullane* and that the defendant's due process rights had been violated, the Court necessarily made the initial determination that the application of the Oklahoma nonclaim statute involved significant state action to implicate the due process requirements of the Fourteenth Amendment. The Court found significant state action existed because, under the provisions of the nonclaim statute, the state court must appoint an executor before notice, which triggers the running of the nonclaim statute, can be given. Thus, the Court reasoned that without the state's involvement, the time bar would never be activated. *Id.* 485 U.S. at 487, 108 S.Ct. at 1346.

In finding state action, the Court distinguished the Oklahoma statute from statutes of limitations with "self-executing feature[s] ... that make[ ] *Mullane* ... inapposite." *Id.* at 486, 108 S.Ct. at 1345. The Court stated that with respect to these statutes:

the State has no role to play beyond enactment of the limitations period. While this enactment obviously is state action, the State's limited involvement in the running

---

1. Bankruptcy Rule 7017 applies Fed.R.Civ.P. 17 in adversary proceedings.

of the time period generally falls short of constituting the type of state action required to implicate the protections of the Due Process Clause.

*Id.* at 486–87, 108 S.Ct. at 1345–46.

Prior to 1990, the Ohio nonclaim statute operated in a manner similar to the Oklahoma statute addressed in *Pope.* However, in response to *Pope* and at the urging of the Ohio Supreme Court,[2] the Ohio General Assembly amended the nonclaim statute in 1990 to eliminate any state action with respect to the activation of the one-year time bar. The state's involvement in the nonclaim statute is now limited to its enactment, and the action which activates the running of the limitations period, i.e., the death of the decedent, is a decidedly private one. Thus, the Ohio nonclaim statute is "self-executing" as that term was described in *Pope* and is not subject to the due process requirements of *Mullane.*

As rehearsed, the Committee's claims against the estate of Stanley Rothenfeld are barred by the Ohio nonclaim statute. The capacity of the estate to be sued was terminated as of February 17, 1994, nearly six months before the Committee notified the estate of its claims. Defendant's motion for summary judgment will be granted.

An appropriate order will follow.

### ORDER OF COURT

AND NOW, this 7th day of March, 1995,

IT IS ORDERED that the motion (document no. 61) of Irving Z. Friedman, Executor of the Estate of Stanley Rothenfeld, for summary judgment be and hereby is granted.

2. *See Palazzi v. Estate of Gardner,* 32 Ohio St.3d 169, 512 N.E.2d 971 (1987).