In the Matter of PRINCETON–NEW YORK INVESTORS, INC. and Seasons Resorts, Inc., Debtors.

Robert P. GIBBONS, Trustee in Bankruptcy, Plaintiff,

v.

FIRST FIDELITY BANK, N.A., AHC, Inc., Eugene Mulvihill, et al., and Great American Recreation, Inc., Defendants.

Bankruptcy Nos. 94–25534, 94–25535. Adv. No. 95–2826.

United States Bankruptcy Court, D. New Jersey.

April 25, 1996.

Hellring, Lindeman, Goldstein & Siegal by Richard B. Honig, Newark, NJ, for Trustee Robert P. Gibbons.

Hannoch Weisman, P.C. by Stuart J. Glick, Arlene Elgart Mirsky, Roseland, NJ, for First Union National Bank.

Wilentz, Goldman & Spitzer by Patricia E. Gardner, Woodbridge, NJ, for Pamela Harriman, the Harriman Trusts, and Tandem Associates, L.P.

Schachter & Stern by Audrey S. Stern, Livingston, NJ, for Great American Recreation, Inc. and Gene Mulvihill.

Robert A. Drexel, Hackensack, NJ, for AHC, Inc.

### OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

There are two matters presently before this Court: the first, a motion by Defendants, Eugene Mulvihill ("Mulvihill") and Great American Recreation, Inc. ("GAR"), to dismiss the Complaint in its entirety as against GAR, and to dismiss all causes of action asserted pursuant to 11 U.S.C. § 548 as against Mulvihill; and the other, a motion by First Fidelity Bank, N.A., now known as First Union National Bank ("First Fidelity"), to dismiss the Complaint in its entirety as against First Fidelity.

A hearing at which this Court reserved its decision on these two motions was held on January 23, 1996. The following constitutes this Court's findings of fact and conclusions of law.

### FACTS

Movant, GAR, a Delaware corporation, together with various subsidiaries, operated an amusement park and ski area in Vernon

Township, New Jersey. One of GAR's alleged subsidiaries is Stone Hill of Vernon, Inc., a New Jersey corporation ("Stone Hill"), which developed condominium units adjacent to GAR's ski facilities. Stone Hill is allegedly the parent corporation of Stone Hill Recreation Corp., a New Jersey corporation ("Stone Hill Recreation"), which operated a hotel, health club and spa for the owners of condominiums developed by Stone Hill. As a result of a merger in the fall of 1989, Stone Hill allegedly changed its name to Great Mountain Development Corp. ("Great Mountain").

GAR was allegedly owned by Mulvihill, Robert Brennan ("Brennan") and Robert and Stanley Holuba (the "Holubas"). In addition to being a shareholder, Mulvihill also allegedly served as a director and chief executive officer of GAR. As of August 1990, GAR, Stone Hill of Vernon, Inc., now Great Mountain, and Stone Hill Recreation were allegedly indebted to First Fidelity on various loans in the approximate amount of $25,000,000.

The Debtor, Princeton–New York Investors, Inc. ("PNY"), was incorporated on September 1, 1988, by Mulvihill, Brennan and the Holubas. In addition to being a shareholder, Mulvihill also allegedly served as a director and chief executive officer of PNY. In 1988, PNY acquired a parcel of land together with the former Playboy hotel and related buildings situated thereon in Vernon Valley, New Jersey ("The Property"). PNY allegedly partially financed the acquisition by a $6,000,000 first mortgage loan from First Fidelity, which was allegedly personally guaranteed by Mulvihill, Brennan and the Holubas. Between 1988 and 1990, PNY managed the hotel property and utilized the vacant portion of the land for construction and sale of golf course villas. In 1990, Seasons Resorts, Inc. ("Seasons") was incorporated in the State of New Jersey as a wholly owned subsidiary of PNY. Seasons assumed all management and operational functions in connection with the hotel.

In 1990, PNY executed a contract with Shinnihon USA Co., Ltd. ("Shinnihon") for the purchase and sale of a golf course located on PNY's premises and adjacent land for $20,000,000. Closing of the sale of the golf course to Shinnihon occurred on or about November 14, 1990.

According to the closing documents, $4,000,000 of the proceeds were used to pay off a "First Fidelity Mortgage." Mulvihill and First Fidelity, the Trustee alleges, agreed on August 15, 1990 that First Fidelity would apply the proceeds not to reduce PNY's indebtedness to First Fidelity, but rather to reduce the amount of loans First Fidelity made to other Mulvihill corporations, i.e., GAR, Stone Hill, and Stone Hill Recreation. The Trustee asserts that Mulvihill and First Fidelity allegedly agreed that First Fidelity's mortgage would continue on the property PNY retained after sale of the golf course. *See* Adler Certification, Exhibits A through C.[1]

AHC, Inc., a New Jersey corporation ("AHC"), was allegedly incorporated by Mulvihill, Brennan and Anthony P. Miele, III ("Miele"), a college student. Miele is named as the president of AHC, but the Trustee alleges that the corporation is controlled by Mulvihill. On or about July 27, 1994, approximately two weeks before the Debtors filed their Chapter 11 petitions, AHC and First Fidelity entered into an agreement whereby AHC purchased the rights of First Fidelity in and to the loan and security agreement with PNY, including the first mortgage lien on PNY's realty and first lien on PNY's personal property. As part of that agreement, First Fidelity agreed to release the principals of PNY, including Mulvihill, from their personal guarantees. At the time of the agreement, the outstanding principal balance owed by PNY was approximately

1. According to an August 15, 1990 memorandum attached as Exhibit B to the Adler Certification, Mulvihill and First Fidelity discussed the "potential sale of certain real estate assets of PNY and [Mulvihill's] proposed use of the proceeds." The Trustee argues here that that memorandum supports the Trustee's allegations that Mulvihill and First Fidelity used proceeds of the sale of Princeton's property to satisfy the indebtedness of GAR, Stone Hill and Stone Hill Recreation. The memorandum states that consent from Princeton's then-existing creditors would be sought by Mulvihill. The Trustee alleges that no such consent was ever sought or obtained.

$4,200,000. AHC purchased First Fidelity's rights for $3,500,000.

On August 12, 1994, PNY and Seasons, collectively referred to as the "Debtors," filed separate petitions for relief under Chapter 11 of the United States Bankruptcy Code. The cases were thereafter consolidated for administrative purposes. On or about October 6, 1994, Robert P. Gibbons was appointed Chapter 11 Trustee of the Debtors ("Trustee").

On October 6, 1995, the Trustee filed an avoidance action against First Fidelity, AHC, Mulvihill and GAR. Count One of the Trustee's Complaint seeks avoidance as a fraudulent conveyance, pursuant to 11 U.S.C. §§ 544 and 548 and N.J.S.A. 25:2–1 *et seq.,* of the asserted transaction whereby First Fidelity applied $4,000,000 of the proceeds of the sale of the golf course, which allegedly belonged to PNY, to satisfy Mulvihill's other obligations to First Fidelity. The Trustee further seeks the return of these monies, plus interest, from First Fidelity to PNY.

Count Two of the Complaint seeks to avoid First Fidelity's transfer of the $4,000,000 proceeds to satisfy obligations other than those of the Debtor on several grounds: (1) that it was made for less than fair consideration; and/or (2) PNY was insolvent at the time of the transfer or was made insolvent by the transfer; and/or (3) the property remaining in the hands of PNY was an unreasonably small capital; and/or (4) Mulvihill intended, believed or had reason to believe that making the transfer would leave PNY unable to pay its debts as they matured.

Counts Three through Five *inter alia* seek recovery from AHC. Count Three seeks a declaration that PNY's mortgage to AHC, as assignee of First Fidelity, is a nullity since the proceeds of sale, properly applied, would have satisfied PNY's obligation to First Fidelity. PNY, therefore, seeks cancellation of the mortgage to AHC and a declaration that AHC is not a secured creditor of PNY.

Count Four of the Complaint seeks a declaration that AHC is not a secured creditor of PNY. Count Four alleges that AHC, as assignee of First Fidelity, is subject to all defenses which could be asserted against First Fidelity. Count Four alleges that the Trustee may avoid First Fidelity's claim due to First Fidelity's participation in the fraudulent transaction.

Count Five of the Complaint seeks, *inter alia,* equitable subordination of AHC's secured claim pursuant to 11 U.S.C. § 510(c).

GAR has filed the instant motion to dismiss for failure to allege any culpable action on its part and failure to make any demand for relief against GAR. Mulvihill has filed the instant motion to dismiss on the grounds that the Complaint seeks relief under 11 U.S.C. § 548 for alleged acts of fraud which occurred more than one year prior to the filing of PNY's chapter 11 bankruptcy petition.

The Trustee has agreed to (1) amend the Complaint to seek specific relief against GAR and Mulvihill; and (2) dismiss his claims based on § 548 without prejudice to restoring those claims should facts be disclosed in discovery which demonstrate that the requirements of § 548 have been met. Memorandum in Opposition to GAR's Motion to Dismiss Complaint at 2, and n. 1.

On February 14, 1996, after the close of argument on these motions, an involuntary Chapter 11 petition was filed against GAR (Case No. 96–21054 (NLW)). On April 2, 1996, GAR filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. That case is pending in this District before the Honorable Novalyn L. Winfield, U.S.B.J.

## DISCUSSION

I. Mulvihill and GAR's Motion for Judgment on the Pleadings

A. Standard for Granting Judgment on the Pleadings

The Defendants, GAR and Mulvihill, have filed a motion to dismiss the Complaint under Fed.R.Civ.Pro. 12(c). Federal Rule of Civil Procedure 12(c) provides:

> After the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are

presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The standard for granting judgment on the pleadings under Rule 12(c) is similar to the standard for granting a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Shelly v. Johns–Manville Corp.,* 798 F.2d 93, 97 n. 4 (3d Cir.1986). That is, the court must view the facts in the pleadings in the light most favorable to the non-moving party and may grant the motion only if the moving party establishes that no material issues of fact remain and that the movant is entitled to judgment as a matter of law. *Id.* (citing *Society Hill Civic Assn. v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980)); *see Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. GAR's Motion for Judgment on the Pleadings

■ GAR has filed a Rule 12(c) motion for judgment on the pleadings on the grounds that the Trustee has failed to allege any culpable action on its part and failed to make any demand for relief against GAR.

Presumably, the Trustee has brought this adversary proceeding against GAR because GAR is the parent of Stone Hill (now known as Great Mountain), which in turn is the parent for Stone Hill Recreation. All of these entities are allegedly owned, at least in part, by Mulvihill. It is argued here by the Trustee that when First Fidelity credited $4,000,000 in sale proceeds to reduce the amount of loans First Fidelity made to other Mulvihill corporations, i.e., GAR, Stone Hill, and Stone Hill Recreation, and not to reduce PNY's indebtedness to Fidelity, those other Mulvihill corporations benefitted at PNY's expense, particularly GAR as parent of those corporations.

■ The original Complaint did not specifically demand any relief from GAR. The amended Complaint, however, adds ¶ 27 which asserts that GAR and Mulvihill benefitted from the application of the proceeds of the sale of the golf course and demands relief in the form of damages against GAR and Mulvihill to the extent of such benefit. Initially this Court is satisfied that to the extent that the Trustee by his opposition to the motion seeks to amend the Complaint, that amendment shall be granted. *See generally,* Fed.R.Bankr.Pro. 7015(a) (applying Fed. R.Civ.Pro. 15 to adversary proceedings); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (leave to amend "shall be freely given when justice so requires"). In determining whether the amended complaint relates back to the original complaint under Fed.R.Civ.Pro. 15(c),

> the emphasis is not on the legal theory of the action, but whether the specified conduct of the defendant, upon which the plaintiff is relying to enforce his amended claim, is identifiable with the original claim. [citation omitted] The basic test is whether the evidence with respect to the second set of allegations could have been introduced under the original complaint, liberally construed; or as a corollary, that in terms of notice, one may fairly perceive some identification or relationship between what was pleaded in the original and amended complaint.

*In re Dean,* 11 B.R. 542, 545 (9th Cir. BAP 1981), *aff'd,* 687 F.2d 307 (9th Cir.1982). This Court finds that the amended complaint arises out of the same transaction at issue in the original complaint and that the parties were on notice of the existence of these claims. Accordingly, this Court finds that the amended complaint relates back to the date the original complaint was filed. This Court is also satisfied that the amended Complaint sets forth a claim against GAR sufficient to withstand a motion for judgment on the pleadings. There exists a material issue of fact as to whether, and to what extent, GAR benefitted from the alleged application of the sale proceeds to reduce the indebtedness to First Fidelity of entities other than PNY. Accordingly, GAR's motion for judgment on the pleadings is denied.

■ To the extent that the Court by this Opinion has granted the Trustee leave to amend the complaint, and to the extent that the amendments are directed against GAR,

the automatic stay pursuant to 11 U.S.C. § 362 applies as a result of GAR's Chapter 11 petition. The Trustee, as a result, must seek relief from the automatic stay in GAR's Chapter 11 case to file and serve the amended Complaint against GAR.

### C. Mulvihill's Motion for Judgment on the Pleadings

Mulvihill seeks judgment on the pleadings on the grounds that the Complaint seeks relief under 11 U.S.C. § 548 for alleged acts of fraud which occurred more than one year prior to the filing of PNY's chapter 11 bankruptcy petition.

The Trustee asserts that the instant motion for judgment on the pleadings should be denied because: (1) the Trustee seeks to avoid the transaction under not only Section 548 of the Bankruptcy Code, but also Sections 544 of the Code and New Jersey state law, N.J.S.A. 25:2–1 *et seq.* The Trustee further asserted that the motion for judgment on the pleadings was premature, as discovery may disclose facts which entitle the Trustee to relief under § 548 of the Bankruptcy Code.

Ultimately, however, the Trustee has agreed to dismiss his claims based on § 548 without prejudice to restoring those claims should facts be disclosed in discovery which demonstrate that the requirements of § 548 have been met. The amended Complaint attached to the Trustee's Memorandum of Law in Opposition to the Motion for Judgment on the Pleadings does not remove the § 548 allegations. This Court will dismiss the Trustee's claims based on § 548 without prejudice.

■ Mulvihill and GAR further argue that the amended Complaint fails to state a claim or cause of action against Mulvihill and GAR on both procedural and substantive grounds. First, Mulvihill and GAR argue that N.J.S.A. 25:2–30 is in the disjunctive, and therefore requires the Trustee to bring suit against either the first transferee of the asset (here, First Fidelity) or the alleged beneficiary of the transfer (here Mulvihill and GAR), but not both.

N.J.S.A. 25:2–30 provides in relevant part:

(b) ... to the extent a transfer is voidable in an action by a creditor under paragraph (1) of subsection (a) of [section] 25:2–29, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection c. of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be against:

(1) The first transferee of the asset or the person for whose benefit the transfer was made; or

(2) Any subsequent transferee other than a good-faith purchaser who took for value or from any subsequent transferee.

Mulvihill and GAR state that, under N.J.S.A. § 25:2–30, the Trustee must elect which defendants to sue, and if two defendants are potentially liable under the statute, the Trustee must elect just one defendant so as to provide only one recovery. Mulvihill and GAR state that "a double (or triple) recovery such as is sought by the Trustee would violate general equity principles."

■ While it is true that double or triple recovery is inequitable and thus not permitted, it is not the case that the Trustee seeks multiple recoveries. The formalistic interpretation of N.J.S.A. 25:2–30 proposed by Mulvihill and GAR is not borne out by the statute or the Complaint. N.J.S.A. 25:2–30 does not prohibit the Trustee from bringing a single action against all parties who may be liable for fraudulent transfers, and does not require the Trustee to choose among potential defendants. The statute merely sets forth the identities of potential defendants.

■ Mulvihill and GAR also assert that the Complaint must be dismissed because they did not benefit from the transfer. Mulvihill and GAR assert that, because the loans to the "Mulvihill entities" were all cross-collateralized and cross-guaranteed, no matter which loan was credited with payment, the net position of Mulvihill and GAR after the transaction was the same as it would have been if the funds had been credited to PNY.

Viewing the facts in the pleadings in the light most favorable to the non-moving party,

this Court finds that there exist material issues of fact regarding whether Mulvihill and GAR benefitted from the transaction at issue herein.

A "benefit" is an advantage, profit, privilege, gain, or some legal right to which an entity would not otherwise have been entitled. *Black's Law Dictionary* 158 (6th ed. 1990). Under this definition, Mulvihill and GAR arguably benefitted from the application of the sale proceeds to reduce loans from First Fidelity to other Mulvihill entities. Accordingly, this Court will not dismiss the Complaint as to GAR and Mulvihill on these grounds.

### D. Conversion of Motion for Judgment on the Pleadings to a Motion for Summary Judgment

The Trustee states that the motion for judgment on the pleadings should be construed as a motion for summary judgment.[2] In the Trustee's answering papers, the Trustee included two internal memoranda from First Fidelity and a closing statement. *See* Cert. of John Adler, Appendices A through C.

Mulvihill and GAR assert that these documents, which were submitted as exhibits to John Adler's certification, are hearsay, and as such, may not be used to convert the motion for judgment on the pleadings to a motion for summary judgment. *See* Fed. R.Civ.P. 56(e); Fed.R.Bankr.P. 7056. This Court will not convert the motion for judgment on the pleadings into a motion for summary judgment. Accordingly, the documents attached to Mr. Adler's certification will be excluded from this Court's consideration of the pending motion. Nonetheless, taken in the light most favorable to the Trustee, the Trustee sets forth a claim

against Mulvihill and GAR for avoidance of a fraudulent transfer sufficient to withstand defendants' motion for judgment on the pleadings. Accordingly, this Court will deny Mulvihill and GAR's motion for judgment on the pleadings.[3]

### II. First Fidelity's Motion to Dismiss the Complaint

#### A. Recovery Pursuant to 11 U.S.C. § 548

First Fidelity, like Mulvihill and GAR, asserts that the Trustee fails to state a claim or cause of action pursuant to 11 U.S.C. § 548 because the allegedly fraudulent transfer occurred more than one year prior to the filing of the petition and seeks dismissal of the Complaint for failure to state a claim under Fed.R.Civ.Pro. 12(b)(6). This Court has determined that the Trustee's claims pursuant to § 548 will be dismissed without prejudice.

#### B. Recovery Pursuant to 11 U.S.C. § 544

First Fidelity, joined by Mulvihill and GAR, asserts that the Trustee fails to state a claim or cause of action against First Fidelity because the Trustee's right to bring such an action was extinguished on or about November 14, 1994 under the New Jersey Fraudulent Transfer Act ("NJFTA"), N.J.S.A. § 25:2-20 *et seq.* First Fidelity states that the Trustee's right to avoid a transfer is identical to the rights of a hypothetical unsecured creditor, whose right to avoid the subject transfer is governed by applicable non-bankruptcy law. *See* 11 U.S.C. § 544(b). Under the NJFTA:

A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless the action is brought:

---

2. Summary judgment is inappropriate where there exists genuine issues of material fact. *See* Fed.R.Civ.P. 12(c); Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). In the instant case, the Trustee asserts that there exists factual issues regarding the role played by Mulvihill, GAR and First Fidelity with respect to First Fidelity's application of $4 million of Princeton's assets to or for the benefit of Mulvihill and his non-debtor companies,

3. To the extent that Mulvihill and GAR join First Fidelity's argument that the Trustee has failed to state a cause of action against the defendants because the Trustee's right to bring such an action was extinguished in November 1994 under the New Jersey Fraudulent Transfer Act, that argument will be fully addressed in the remaining portion of this Opinion.

a. Under Subsection a. of R.S. 25:2–25, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by claimant.

\* \* \* \* \* \*

N.J.S.A. § 25:2–31. First Fidelity asserts that, because a hypothetical unsecured creditor could not avoid the sale because the creditor's cause of action was extinguished prior to its being brought, the Trustee likewise may not bring the cause of action.

### (1) Statutes of Limitations Versus Statutes of Repose

First Fidelity emphasizes the difference between a statute which extinguishes a cause of action (also known as a "statute of repose") and a procedural statute of limitations. The Fourth Circuit Court of Appeals described the difference between statutes of limitations and statutes of repose as follows:

A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir.1987), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988). A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time. *Id.* Statutes of limitations are motivated by considerations of fairness to defendants and are intended to encourage prompt resolution of disputes by providing a simple procedural mechanism to dispose of stale claims. *Harig v. Johns–Manville Products Corp.*, 284 Md. 70, 75, 394 A.2d 299 (1978). Statutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time

limit beyond which liability no longer exists. *Whiting–Turner*, 304 Md. [340] at 349–50, 499 A.2d 178. Thus, as a general rule, a statute of limitations is tolled by a defendant's fraudulent concealment of a plaintiff's injury because it would be inequitable to allow a defendant to use a statute intended as a device of fairness to perpetrate a fraud. Conversely, a statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body. *Knox v. AC & S, Inc.*, 690 F.Supp. 752, 759 (S.D.Ind.1988).

*First United Methodist Church v. United States Gypsum Co.*, 882 F.2d 862, 865–66 (4th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990); *see also Rolo v. City Investing Co. Liquidating Trust*, 845 F.Supp. 182, 223 (D.N.J.1993); *In re Vellalos*, 780 F.Supp. 705, 708 (D.Hawai'i 1992) (federal government bound by state statute of repose); *Marshall v. George M. Brewster & Son, Inc.*, 37 N.J. 176, 181, 180 A.2d 129 (1962).

Under the analysis proposed by First Fidelity, N.J.S.A. § 25:2–31 is a statute of repose [4] which extinguished the Trustee's right to bring this cause of action four years after the November 14, 1990 closing of the transaction, or November 14, 1994. The Trustee filed the instant Complaint on October 6, 1995. It is not disputed that the cause of action instituted by the Trustee existed as of the petition date, August 12, 1994. The issue presently before this Court is whether the Trustee was required by the state statute of repose to bring the present action on or before November 14, 1994 or whether the Trustee's Complaint, filed on October 6, 1995, was timely under § 544 of the United States Bankruptcy Code (the "Code"), as extended by § 546 or § 108 of the Code.

Section 544(b) states:

4. This Court finds that N.J.S.A. § 25:2–31 is a statute of repose because it embodies the most distinctive characteristic of a statute of repose, the barring of the right to bring an action rather than the remedy prescribed. The New Jersey Senate Labor, Industry and Profession's Committee Statement Report which accompanied the

enactment of the New Jersey Fraudulent Transfer Act stated in pertinent part:

The bill also provides a statute of limitation that bars the right rather than the remedy on expiration of the statutory periods prescribed. Assembly No. 1265–L. 1988 c. 74.

The trustee may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b).

Section 546 establishes certain limitations on the trustee's avoiding powers:

(a) An action or proceeding under § 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302 or 1202 of this title; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).[5]

■ Section 544(b) does not specify the date upon which the transaction must be voidable. The caselaw, however, is clear that the appropriate date is the date of the filing of the petition. As the court in *In re Dry Wall Supply, Inc.* explained:

[A]s long as the state law statute of limitations has not run before the debtor's filing for bankruptcy, the trustee can bring a fraudulent conveyance action as long as he complies with the provisions of § 546(a). A number of courts have adopted this view. *See, e.g., Eisenberg v. Feiner (In re Ahead By A Length, Inc.),* 100 B.R. 157, 164 (Bankr.S.D.N.Y.1989) (to sue successfully under § 544(b), "the trustee must have commenced suit within two years of her appointment ... on a cause of action which was viable under applicable law on the date that the bankruptcy petition was filed"); *Williams v. Browning (In re Silver Wheel Freightlines, Inc.),* 64 B.R. 563, 568 (Bankr.D.Or.1986) (recovery under § 544(b) depends on whether at the time of filing "there was in existence a creditor holding an unsecured claim who could re-

cover under Oregon law [which in turn] depend[s] upon whether Oregon's statute of limitations barred creditors from recovery at the time of filing Chapter 11"); *L.A. Clarke & Son, Inc. v. Donald (In re L.A. Clarke & Son, Inc.),* 59 B.R. 856, 859 (Bankr.D.C.1986) (in order for debtor in possession to prevail under § 544(b), "there must be at least one unsecured creditor of [the debtor] whose claim was not barred by limitations or laches on ... the date [the debtor] filed its bankruptcy petition").

111 B.R. 933, 936 (D.Colo.1990). The district court in *Dry Wall Supply* held that the bankruptcy trustee's fraudulent conveyance claim was not time barred where the debtor filed for bankruptcy before the state statute of limitations had expired and the trustee commenced the action within two years of his appointment and before the closing or dismissal of the case. 111 B.R. at 935–37. *See also In re Martin,* 142 B.R. 260, 265–66 (Bankr.N.D.Ill.1992); *In re Topcor, Inc.,* 132 B.R. 119, 124 (Bankr.N.D.Tex.1991).

First Fidelity asserts that *Dry Wall Supply* and its progeny are distinguishable because they involve the applicability of § 544 to state statutes of limitations, rather than statutes of repose, such as the one at issue in this proceeding. First Fidelity asserts that the extinguishment, after the petition date, of a creditor's ability to institute an avoidance action applies equally to the trustee's ability to institute such an action because Section 544(b) confers upon the trustee no greater rights of avoidance than the creditor himself would have if he were asserting invalidity on his own behalf. *See Topcor,* 132 B.R. at 123–24 (citing 4 Collier on Bankruptcy, ¶ 544.03[2] at 544–21 to –22 (L. King 15th ed. 1989)). First Fidelity asserts that because N.J.S.A. § 25:2–31 is a statute of repose, that statute, by definition, is not subject to equitable tolling, including the tolling provisions of § 108 of the Bankruptcy Code.[6] *See Lampf*

---

**5.** Section 546(a)(1) was amended by § 216 of the Bankruptcy Reform Act of 1994, Pub.L. 103–394. These amendments became effective for all cases commenced on or after October 22, 1994. PNY's and Season's bankruptcy cases were commenced on August 12, 1994. Accordingly, the pre-Reform Act version of Section 546(a) is applicable to the present case.

**6.** Section 108 provides:
§ 108. Extension of time.
(a) If applicable nonbankruptcy law ... fixes a period within which the debtor may

*v. Gilbertson,* 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). First Fidelity further argues that Section 108 is not applicable here as the debtor pre-petition did not have the right to bring a fraudulent conveyance action.

### (2) Preemption of State Law by Federal Law

At this juncture, a brief discussion of the doctrine of preemption is required. The Third Circuit has adopted the following framework for determining whether a state law may be preempted by federal law:

> In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress. Federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. Second, congressional intent to preempt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. . . .

> As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs either because "compliance with both federal and state regulations is a physical impossibility," or because the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Witco Corp. v. Beekhuis,* 38 F.3d 682, 687 (3d Cir.1994) (quoting *California Federal Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 280–81, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (citations omitted)).

The Court of Appeals further stated:

> commence an action and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

[F]ederal preemption of state law is not favored. This is particularly true in areas traditionally dominated by the individual states. . . . In an area that has been traditionally occupied by the states, the court must assume that the prerogatives of the states were not to be superseded by a federal law unless it is the clear and manifest purpose of Congress. Indeed, for preemption to occur in a field traditionally occupied by the states, there must be a 'sharp' conflict between state law and federal policy.

*Witco,* 38 F.3d at 687.

### (3) *Phar–Mor* and *Witco:* Decedents' Estates, Statutes of Repose and Federal Preemption

The Court will examine two additional cases which discuss the question of whether a particular statute of repose is preempted by federal law. They are *In re Phar–Mor, Inc. Securities Litigation,* 178 B.R. 692 (W.D.Pa. 1995) and *Witco Corp. v. Beekhuis,* 38 F.3d 682 (3d Cir.1994).

In *Phar–Mor,* the creditors committee brought an action pursuant to 11 U.S.C. § 548 and § 544, the latter of which applies applicable relevant state fraudulent conveyance laws seeking to avoid and recover from Phar–Mor's shareholders monies paid to them when they sold shares back to the company. The committee alleged, *inter alia,* that the stock repurchase payments constituted fraudulent transfers under § 544 of the Code. One of the defendants in that action died approximately six months after Phar–Mor filed its Chapter 11 bankruptcy petition and over one and one half (1½) years before the creditors committee filed the adversary complaint. The executor of the estate moved for summary judgment on the grounds that the claims against the decedent's estate were barred by the Ohio nonclaim statute, which barred all claims against a decedent's estate which were presented more than one year after the decedent's death. The Committee argued, *inter alia,* that the nonclaim statute

> 1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> 2) two years after the order for relief.
> 11 U.S.C. § 108(a).

was inapplicable because it conflicted with § 546 of the Bankruptcy Code, which provides a two-year statute of limitations for the commencement of adversary proceedings.

In determining whether § 546 of the Bankruptcy Code preempted Ohio's nonclaim statute, the *Phar–Mor* court found that Congress had not expressly or impliedly preempted state law by enacting the Bankruptcy Code. In addition, the Court found that there was no actual conflict between state and federal limitations periods because the committee could have complied with both limitations periods. Finally, the court found that the Ohio nonclaim statute did not impede the accomplishment of Congressional objectives. *Id.* at 694–95.

The *Phar–Mor* court suggested in *dicta* that, with respect to state statutes of limitation, it would likely have followed the decisions in *Dry Wall Supply, supra,* and *In re Hansen,* 114 B.R. 927 (Bankr.N.D.Ohio 1990), which held that § 546 of the Bankruptcy Code overrides state statutes of limitations that shorten the period provided by federal bankruptcy law. The court concluded, however, that the state nonclaim statute dictated a different result.

In the face of the Supremacy Clause, we would be inclined to agree with the Committee were it not for the fact that the cases relied upon by the Committee deal with the application of a general state statute of limitations whereas, in the instant case, the statute in question is a nonclaim statute. While the former serves merely to protect a party from stale claims and is not wrapped up in traditional state regulation, the latter implicates not only the state's traditional right to regulate probate matters, but also the right to determine the capacity of its citizens to be sued. 178 B.R. at 695.

The *Phar–Mor* court relied upon the decision of the Court of Appeals for the Third Circuit in *Witco Corp. v. Beekhuis,* 38 F.3d 682 (3d Cir.1994). Witco brought an action for contribution against the estate of a former officer, director and majority shareholder who was named by the Environmental Protection Agency as a potentially responsible party in a CERCLA action. The applicable Delaware nonclaim statute required that claims against a decedent's estate must be filed within eight months of the date of death. *See* 12 Del.Code Ann. § 2102(a). There is a three-year limitations period from the date of judgment or a judicially approved settlement for making a claim for contribution under CERCLA. 42 U.S.C. § 9613(g)(3). In *Witco,* the court of appeals held that CERCLA's limitations period does not preempt Delaware's nonclaim statute governing administration of decedents' estates.[7]

### (4) Application of the Preemption Doctrine to the New Jersey Fraudulent Transfer Act

■ Congress did not, in enacting the Bankruptcy Code, expressly or impliedly preempt state law. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979) (property rights in assets of bankrupt's estate generally governed by state law); *Matter of Roach,* 824 F.2d 1370, 1374 (3d Cir.1987) ("[A]bsent a countervailing federal interest, 'the basic federal rule is that state law governs.' ... [T]he Bankruptcy Code was written with the expectation that it would be applied in the context of state law.") (citations omitted); *Phar–Mor,* 178 B.R. at 694 (quoting *BFP v. Resolution*

---

7. In support of its assertion that statutes of repose are not preempted by federal statutes of limitations, First Fidelity generally cited *First United Methodist Church v. United States Gypsum Co.* (hereinafter *"Gypsum"*), 882 F.2d 862, 865–66 (4th Cir.1989), an action against an asbestos manufacturer for cost of removing the asbestos from a church structure. In *Gypsum,* First United asserted that the period under a Maryland statute of repose had been preempted by CERCLA, which establishes a uniform statute of limitations for all state law property damage actions based on the release of hazardous substances into the environment. The court of appeals for the Fourth Circuit held that the period provided in the statute of repose governed the action because CERCLA does not apply to private asbestos-removal actions, particularly where the hazard created is isolated to a single building. 882 F.2d at 867. In so holding, the court did not address the issue of whether CERCLA would have preempted the statute of repose period if the danger had extended beyond a single building to the surrounding environment.

*Trust Corp.*, 511 U.S. 531, ——–——, 114 S.Ct. 1757, 1765–66, 128 L.Ed.2d 556 (1994) ("The Bankruptcy Code can of course override [state law] by implication when the implication is unambiguous. But where the intent to override is doubtful, our federal system demands deference to long established traditions of state regulation")). Therefore, in order for Section 546 of the Bankruptcy Code to preempt New Jersey's Fraudulent Transfer Act, the Trustee must establish that either (1) it is impossible to comply with both section 546 of the Bankruptcy Code and N.J.S.A. § 25:2–31; or (2) that the statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Phar–Mor,* 178 B.R. at 695.

It is clear that the Trustee could have complied with both N.J.S.A. § 25:2–31 and Section 546 of the Bankruptcy Code under the circumstances of this case. The Trustee was appointed on October 6, 1994. Pursuant to N.J.S.A. § 25:2–31, First Fidelity argues that the instant action to avoid the allegedly fraudulent transfer was extinguished four years after the date of the transaction, or November 14, 1994. Thus, under state law the Trustee had just over one month after his appointment to bring the present action. The Court is well aware of the burdens that such a short limitations period places upon the Trustee. The burden of compliance, however, is relevant to this Court's determination as to whether giving effect to the statute of repose "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

■ This Court holds that the statute of repose at issue in the present case presents an obstacle to the objectives of Congress in enacting the Bankruptcy Code. The two-year period provided to trustees under § 546 is designed to give "the trustees some breathing room to determine what claims to assert under § 544." *See Dry Wall Supply,* 111 B.R. at 936. Section 108(a) also grants

the trustee time to evaluate claims held by the estate and to sort out the affairs of the estate in an orderly fashion. *See* H.Rep. No. 595, 95th Cong., 1st Sess. 318 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6275. This reprieve from the statute of limitations clock is especially important where the management of a business, in the period immediately prior to bankruptcy, may not have adequate incentives to bring lawsuits in a timely fashion where the recovery is remote in either time or certainty or the prospective benefits would accrue to creditors rather than shareholders. Section 108(a) allows the trustee to counteract the possibility that management was not adequately serving the creditors' interests in the period before filing.

■ In addition, the courts' decisions in *Phar–Mor* and *Witco* were strongly influenced by "the state's traditional right to regulate probate matters." 178 B.R. at 695. When dealing with avoidance actions in a bankruptcy case, unlike in *Phar–Mor* and *Witco,* there is no countervailing state interest which would outweigh the fulfillment of Congressional goals of maximizing the bankruptcy estate for the benefit of creditors. This Court has carefully balanced the public policy considerations which motivated the state legislature to enact the statute of repose at issue here with the bankruptcy goals served by the Trustee's efforts to maximize the bankruptcy estate for the benefit of creditors. Pursuant to the Supremacy Clause,[8] and in the absence of substantial countervailing state law considerations, the goals to be served by federal bankruptcy law must prevail.

This Court is persuaded under the circumstances of this case that application of the state statute of repose so severely restricts the trustee's ability to recover property for the benefit of the bankruptcy estate that it obstructs the accomplishment and execution of the full purposes and objectives of Congress in enacting the Bankruptcy Code.

8. The Supremacy Clause, Art. VI, cl. 2 of the United States Constitution, provides:
   This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . , shall be the supreme Law of the

Land; and . . . the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

This Court finds that the state statute at issue herein, N.J.S.A. § 25:2–31, under the specific facts of this case, collides with federal bankruptcy law, including § 546 of the Bankruptcy Code, and, pursuant to the Supremacy Clause, the state law must yield. This Court holds, therefore, that under the facts of this case N.J.S.A. § 25:2–31 is preempted by federal bankruptcy law. Accordingly, the avoidance action commenced by the Trustee on October 6, 1995 was timely, as it was commenced within the two-year statutory period of § 546 of the Bankruptcy Code. Accordingly, First Fidelity's motion to dismiss the balance of the Complaint (the § 544 claims) is hereby DENIED.

An Order in accordance with this Opinion shall be submitted.