Earl RADER, Appellant,

v.

J. Marvin BOYD, Appellee.

No. 5669.

United States Court of Appeals
Tenth Circuit.

Dec. 23, 1957.

Rehearing Denied April 4, 1958.

Leave to File Second Petition for Rehearing Denied May 14, 1958.

Charles D. Crandall, Oklahoma City, Okl., for appellant.

James A. DeBois, Duncan, Okl., for appellee.

Before MURRAH, PICKETT and LEWIS, Circuit Judges.

MURRAH, Circuit Judge.

The question presented here is whether the trial court erred in reversing an order of the Referee in Bankruptcy, confirming a real property arrangement under Chapter XII, Title 11 U.S.C.A., apparently on the grounds that it was not feasible, because it did not fairly and equitably afford the appellee, Boyd, a nonassenting creditor, adequate protection contemplated by Chapter XII. The first contention is that Boyd, the only nonassenting creditor, had no equitable standing to assert claims in the bankruptcy proceedings, because he obtained such claims through breach of a fiducial relationship then existing between him and the debtor-appellant.

The pertinent facts in that regard are that appellant, Earl Rader, is the owner of oil and gas leases upon which he has incurred indebtedness in excess of $420,000, more than $200,000 of which was owed to secured creditors, including the First National Bank of Fort Worth, Texas, and the United Supply and Manufacturing Company of Tulsa, Oklahoma. In September 1955, United Supply filed an action in the Oklahoma state court for the foreclosure of its mortgage upon Rader's property and for the appointment of a receiver. The receiver was duly appointed and has been acting in that capacity ever since. In July, 1956, Rader came in contact with appellee, Boyd, and they discussed a plan for the pooling of their oil and gas holdings and the payment of Rader's indebtedness. Boyd was going East in an attempt to obtain refinancing for his own properties and he appears to have agreed to make some effort to refinance Rader's properties. To this end, Rader provided Boyd with well logs and other data concerning the properties. Rader says that during their negotiations, he informed Boyd that several of the secured creditors would discount amounts owed to them twenty-five percent and would waive interest and attorneys fees. The parties remained in contact for several months, but the record indicates rather conclusively that no actual agreement between them ever came into existence, for, on October 19, 1956, Rader wrote Boyd, advising that he could not "wait longer for a definite financial proposal from you. Unless you have some definite offer to submit for my immediate consideration, I shall be obliged to look elsewhere." On November 12, 1956, at a meeting in Duncan, Oklahoma, Boyd informed Rader that he was not going through with the deal. Rader testified, however, that on the following day he received a long distance telephone call from Boyd in which Boyd stated that he would "go along with the deal" if Rader would come to his office in Dallas the following Monday so they could work it out. On the same day, Rader was served with a summons issued from the State District Court in the foreclosure action, originally filed by United Supply and pursuant to which the operating receiver had been appointed. At that time Boyd had apparently obtained assignments of notes and mortgages held by Rader's secured creditors, all of which, except the indebtedness of the First National Bank of Fort Worth, had been discounted twenty-five percent. Boyd was substituted for the original creditors in the state court proceedings and prayed for immediate foreclosure. Rader thereupon instituted this Chapter XII proceedings. All of the unsecured creditors accepted the proposed arrangement, but Boyd, as holder of all the secured indebtedness, objected.

A court of bankruptcy is a court of equity, exercising equitable powers of broad sweep. And, within the statutory scheme, the court may exert such powers in full vigor with respect to the allowance, rejection or subordination of claims. It is empowered to "sift the circumstances surrounding any claim to see that injustice and unfairness is not done in the administration of the bankrupt estate." Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 246, 84 L.Ed. 281. See also Woodruff v. Heiser, 10 Cir., 150 F.2d 869, reversed on other grounds, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970;

Central States Corp. v. Luther, 10 Cir., 215 F.2d 38; Inter-State National Bank of Kansas City v. Luther, 10 Cir., 221 F.2d 382; Luther v. United States, 10 Cir., 225 F.2d 495; W. F. Sebel Co. v. Hessee, 10 Cir., 214 F.2d 459; 1 Collier on Bankruptcy 2.09; 6 Collier 9.15.

■■■ We have no doubt of the power of the bankruptcy court to disallow a claim acquired in violation of a fiducial or confidential relationship and in a manner to make it unjust and inequitable to assert it against the estate. But, we think the proof falls short of establishing a fiducial or confidential relationship which would equitably forbid Boyd to assert his claims. While fiducial or confidential relationships recognized and enforced in equity do not rest upon any particular legal relationship, they do necessarily spring from an attitude of trust and confidence and are based on some form of agreement, either expressed or implied, from which it can be said that the minds have met to create a mutual obligation. A confidential relationship is never presumed and the burden is upon the party asserting it. Appleman v. Kansas-Nebraska Natural Gas Co., 10 Cir., 217 F.2d 843, and cases cited there. Parties may assuredly deal at arm's length for their mutual benefit without raising a confidential relationship between them. The parties here did enter into negotiations looking toward some arrangement, but the evidence is not clear what relationship was contemplated. It cannot be said that they entered into a partnership, or a joint venture, or that Boyd became Rader's agent for the purpose of refinancing his properties. Indeed, the proof does not show that Boyd acquired any confidential facts or information in his relations with Rader which were not a matter of record or immediately available to any interested party. It may be that his conduct did not conform to the highest ethical standards, but having no fiducial relationship, his duty arose no higher than the morals of the market place.

■■■ We hold that Boyd was not barred from asserting his claims. He objected and they represented more than two-thirds of a majority in amount, and the question is whether the proposed plan afforded adequate protection for the realization of the value of his claims, "(a) by the transfer or sale, or by the retention by the debtor, of such property subject to such debts; or (b) by a sale of such property free of such debts, at not less than a fair upset price, and the transfer of such debts to the proceeds of such sale; or (c) by appraisal and payment in cash of the value of such debts; or (d) by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection;" 11 U.S.C.A. § 861 (11). And see Meyer v. Rowen, 10 Cir., 195 F.2d 263. The proposed arrangement provided for the retention of the bankrupt estate by the debtor, subject to the debts, and deferred any further payments to the creditors until June 1957, during which time the oil runs would be allowed to accumulate. Out of these runs, the debtor would use approximately $10,000 to drill a forced offset well on one of his leases. If this well was successful, additional funds would be used to drill a second well. In the event the first two were successful, an additional $27,000 would be used for the drilling of a third well on another lease. The proposal reduced Boyd's secured claims by the amount which they were discounted to him, and provided for the payment to him in the amount of $8,000 per month commencing August 20, 1957, contingent of course upon the availability of the funds. In short, the plan provided for a speculative venture with accrued funds belonging to the secured creditors.

We agree with the trial court that an arrangement which offers no more than a speculative venture with creditor's funds is not adequate protection for the secured creditors, and therefore not feasible within the contemplation of the Bankruptcy Act. See Massey v. Farm-

ers & Merchants National Bank & Trust Co., 4 Cir., 94 F.2d 526; Iden v. New York Life Ins. Co., 4 Cir., 107 F.2d 695.

The judgment is affirmed.