**In re DRY WALL SUPPLY, INC., a Colorado corporation, Debtor.**

**Joseph G. ROSANIA, Trustee, Plaintiff–Appellant,**

**v.**

**William J. HALIGAS and Chase Commercial Corporation, a Delaware corporation, Defendants–Appellees.**

**Bankruptcy No. 85 B 7065 C.
No. 87–K–1971.
Adv. No. 86 J 1071.**

United States District Court,
D. Colorado.

March 16, 1990.

Theodore M. Smith, Richard P. Brentling-er, Joel A. Moritiz, Inman, Erickson & Flynn, Denver, Colo., for Joseph Rosania.

Glen E. Keller, Jr., Elizabeth E. Brown, Davis, Graham & Stubbs, Denver, Colo., for Chase Commercial Corp.

Gregory B. Kanan, Brent R. Cohen, Rothgerber, Appel, Powers & Johnson, Denver, Colo., for Haligas.

### MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this appeal, the trustee for the estate of Dry Wall Supply, Inc., Joseph G. Rosania, contests the bankruptcy court's decision granting summary judgment for William J. Haligas and the Chase Commercial Corporation on the trustee's claims for fraudulent conveyance and equitable subordination. The trustee argues that the bankruptcy court erred in finding that his fraudulent conveyance claim was barred by the statute of limitations, contending that § 546(a) of the Bankruptcy Code grants him an additional two year period to bring a fraudulent conveyance claim under § 544(b). In addition, the trustee claims that the court erroneously dismissed his equitable subordination claim because it found that there was no fiduciary relationship between the defendants and the debtor. I reverse the ruling that the fraudulent conveyance action was barred by the statute of limitations and affirm the ruling on the equitable subordination claim, although on different grounds.

### I. Facts.

The debtor, Dry Wall Supply, Inc., was a Colorado corporation engaged in the wholesale supply of drywall and other building materials. For many years, Dry Wall Supply, Inc. was owned by defendant William J. Haligas. In 1983, Haligas decided to sell the company to certain individuals for $3.5 million. To consummate the sale, on February 17, 1983,[1] Haligas transferred his stock in Dry Wall Supply, Inc. to the Dry Wall Holding Corp., a holding company formed by the purchasers. In exchange, Haligas received $2.5 million in cash and a promissory note for $1 million secured by certain assets of the business. Dry Wall Supply, Inc. cosigned the note. Financing for the transaction was provided by Lincoln First Bank, N.A., predecessor in interest to defendant Chase Commercial Corporation. Lincoln secured its loans to Dry Wall Supply, Inc. with an interest in the debtor's real and personal property.

On November 18, 1985, Dry Wall Supply, Inc. filed for bankruptcy under Chapter 13 of the Code. On July 1, 1986, the case was converted to a Chapter 7 bankruptcy. On November 29, 1986, the trustee commenced this action against Haligas, later amending his complaint to add Chase as a defendant. The complaint asserted four claims against the defendants: equitable subordination, fraudulent conveyance under §§ 544 and 548 of the Code, preference and the recov-

---

1. The record is unclear whether the transfer occurred on February 13, 1983 or on February 17, 1983. In either case, resolution of this issue is not dispositive on this appeal.

ery of an unpaid debt. Haligas then moved for summary judgment on the fraudulent conveyance claim, and Chase moved for summary judgment on all of the claims. On December 1, 1987, the bankruptcy court granted the motions, and it later denied the trustee's motion to reconsider.

In granting the motions for summary judgment, the court held *inter alia* that the trustee's fraudulent conveyance claim under Colo.Rev.Stat. § 38-10-117 (as incorporated by § 544(b) of the Code) was barred by Colorado's three-year statute of limitations for such claims. The court rejected the trustee's argument that § 546(a) of the Code provided a two-year extension of this period, stating:

> That is simply a misreading of the statute. Section 546 is entitled "Limitations on avoiding powers" and subsection (a) provides that an "action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of—(1) two years after the appointment of a trustee ...; or (2) the time the case is closed or dismissed." Rather than extending a state statute of limitations, § 546 places an *additional* time bar to the trustee in bringing actions.

R.Vol. I., Doc. 28 at 3-4. It likewise rejected the trustee's argument that § 108 of the Code extended the statute of limitations, concluding that the claim was time-barred. As to the trustee's argument that Chase's interest should be equitably subordinated to the claim of the general unsecured creditors, the court held that the trustee had not asserted the requisite facts to establish a fiduciary relationship between Chase and the debtor, a requirement under the Tenth Circuit's decision in *Rader v. Boyd*, 252 F.2d 585 (10th Cir.1957). The trustee now appeals these rulings as to the fraudulent conveyance and equitable subordination claims; however, it does not appeal the court's dismissal of its other claims.

## II.   *Issues.*

### A.   *Fraudulent Conveyance Claim.*

In reviewing a summary judgment order, the appellate court applies the same evidentiary standard employed by the trial court. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Viewing the record in the light most favorable to the party opposing the motion, an order granting summary judgment must be affirmed if it is clear from the record that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Willner v. Budig*, 848 F.2d 1032, 1033-34 (10th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989).

The trustee's first argument regarding the court's dismissal of the fraudulent conveyance claim is that it was not barred by the three-year statute of limitations because, under § 546(a) of the Code, he had two additional years from the date he was appointed to commence the action.[2] Section 546(a) provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title;
>
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). The bankruptcy court and the defendants disagree with this interpretation of § 546(a), contending that it simply places an additional limitations period for the commencement of an action under the sections listed. In other words, § 546 requires that the action be commenced not only within the state limitations period, but also within two years of the trustee's appointment or before the case is closed or dismissed, whichever occurs first.

---

**2.** The trustee also argues that § 108(a) of the Code grants him an additional two year extension of time to bring this action. However, by its express terms, this section applies only to actions which the *debtor* could commence prepetition. It is therefore inapplicable to the

trustee's action under § 544(b), in which the trustee asserts a claim as a putative creditor. *See Castlen v. Ohio Valley Nat'l Bank (In re Wilson)*, 106 B.R. 125, 126 (Bankr.W.D.Ky. 1989).

Under this interpretation, since the fraudulent transfer occurred on February 17, 1983, under Colorado state law, an action for fraudulent conveyance must be commenced within three years, or before February 17, 1986. *See* Colo.Rev.Stat. § 13–80–101(1)(c) (1987) (establishing a three-year statute of limitations for actions for fraud, misrepresentation, concealment or deceit). In addition, under § 546(c), the action cannot proceed if the trustee was appointed more than two years earlier or the case had been closed or dismissed.[3] Thus, since the trustee's complaint was not filed until November 24, 1986, the bankruptcy court and the defendants conclude that the action was time barred.

This interpretation overlooks the language of § 544(b) of the Code and the consequences on the trustee's ability to recover property for the benefit of the estate. Section 544(b) states:

> The trustee may avoid any transfer of an interest of the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b). The interrelationship between § 544(b), state law statutes of limitation, and § 546(a) is explained in *Collier on Bankruptcy:*

> Since the trustee, under section 544(b), will often be compelled to stand on the rights of a single qualified creditor, it is to be expected that questions of estoppel and the effect of the running of statutes of limitations will arise. The general rule is that section 544(b) confers upon the trustee no greater rights of avoidance than the creditor himself would have if he were asserting invalidity on his own behalf. Consequently, if the creditor is deemed estopped to recover upon his claim, or is barred from recovery because of the running of a statute of limitations *prior to the commencement of the case*, the trustee is likewise rendered impotent. Once the case has

commenced, section 546(a), *infra*, specifies the time within which the trustee must act under section 544(b).

4 *Collier on Bankruptcy* ¶ 544.03[2] at 544–21 to –22 (L. King 15th ed. 1989).

Consequently, under the *Collier* interpretation of §§ 544(b) and 546(a), as long as the state law statute of limitations has not run before the debtor's filing for bankruptcy, the trustee can bring a fraudulent conveyance action as long as he complies with the provisions of § 546(a). A number of courts have adopted this view. *See, e.g., Eisenberg v. Feiner (In re Ahead By A Length, Inc.),* 100 B.R. 157, 164 (Bankr.S. D.N.Y.1989) (to sue successfully under § 544(b), "the trustee must have commenced suit within two years of her appointment ... on a cause of action which was viable under applicable law on the date that the bankruptcy petition was filed"); *Williams v. Browning (In re Silver Wheel Freightlines, Inc.),* 64 B.R. 563, 568 (Bankr.D.Or.1986) (recovery under § 544(b) depends on whether at the time of filing "there was in existence a creditor holding an unsecured claim who could recover under Oregon law [which in turn] depend[s] upon whether Oregon's statute of limitations barred creditors from recovery at the time of filing Chapter 11"); *L.A. Clarke & Son, Inc. v. Donald (In re L.A. Clarke & Son, Inc.),* 59 B.R. 856, 859 (Bankr.D.C. 1986) (in order for debtor in possession to prevail under § 544(b), "there must be at least one unsecured creditor of [the debtor] whose claim was not barred by limitations or laches on ... the date [the debtor] filed its bankruptcy petition"). Applying this rationale to the instant case, the trustee's action is not barred because the debtor filed for bankruptcy before the state law limitations period expired and the trustee commenced the action within two years of his appointment and before the closing or dismissal of the case.

This view makes sense for other reasons. Section 546(a) in essence gives the trustee some breathing room to determine what

---

**3.** Neither element under § 546(a) would bar the trustee's action in this case. The trustee was appointed on July 8, 1986 (less than two years before the action was commenced) and the case was not closed or dismissed at the time the action was brought.

claims to assert under § 544. Without this approximate two-year period, a trustee who does not immediately determine what potential claims are available for the recovery of assets may forever be barred from asserting those claims if the statute of limitations expires early in the bankruptcy, or potentially before the trustee is even appointed. Such would contravene the broad powers Congress has granted to the trustee under §§ 544, 547 and 548 of the Code to recover property for the benefit of the estate.

Chase argues, nevertheless, that a fraudulent conveyance action is not an action to recover property for the benefit of the estate and therefore the bankruptcy stay would not prevent a creditor from suing Chase or Haligas. Chase's position is unacceptable. First, § 541 of the Code defines property of the estate to include "[a]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title." 11 U.S.C. § 541(a)(3). Section 550 of the Code in turn provides that the trustee can recover for the benefit of the estate the value of property transferred "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title." *Id.* § 550(a); *see also Delgado Oil, Inc. v. Torres,* 785 F.2d 857 (10th Cir.1986) (creditor may not bring post-petition preference action; such action is property of the estate). Clearly, a fraudulent conveyance action under § 544(b) is an action for the recovery of property for the benefit of the estate. Second, Chase's position conflicts with *In re Munoz,* 111 B.R. 928 (D.Colo. 1990), where I held that an individual creditor, absent special circumstances, does not have standing to assert a fraudulent conveyance claim on behalf of the estate, much less for its own benefit. Consequently, I reverse the bankruptcy court's ruling that the trustee's fraudulent conveyance

claim was barred by the statute of limitations.[4]

### B. *Equitable Subordination Claim.*

The trustee also contests the dismissal of his claim for equitable subordination of Chase's lien on the debtor's property. Section 510(c) of the Code permits the bankruptcy court, after notice and a hearing, "under the principles of equitable subordination, [to] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(c)(1). This section was intended to codify case law which permitted such subordination, *see, e.g., Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Taylor v. Standard Gas & Elec. Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1938), and to permit the courts to develop this doctrine further. *See* 3 *Collier on Bankruptcy* ¶ 510.05[1] (L. King 15th ed. 1989) (citing House Report and statements in Congressional Record).

██ In this case, the bankruptcy court held that equitable subordination was inappropriate in this case because the trustee had not demonstrated that some sort of fiduciary relationship existed between the debtor and the creditor sought to be subordinated (i.e., Dry Wall Supply, Inc. and Chase). The court relied on the Tenth Circuit case of *Rader v. Boyd,* 252 F.2d 585, 587 (10th Cir.1957), in which the court denied the debtor's request that a creditor's claim be disallowed because the debtor did not demonstrate "a fiducial or confidential relationship which would equitably forbid [the creditor] to assert his claims." The creditor in *Rader* was contacted by the debtor to arrange for refinancing of the debt on his properties. Instead of procuring the refinancing, the creditor obtained assignments of the notes and mortgages on

---

**4.** Defendant Haligas asserts that if I reverse the bankruptcy court's ruling on the statute of limitations question, there are adequate alternative grounds in the record upon which to grant summary judgment. In particular, Haligas argues that there are no material issues of fact as to the absence of a bona fide creditor as of the

time of the fraudulent conveyance, that the debtor was not rendered insolvent by the transaction, and that it had no intent to hinder, delay or defraud its creditors. In my opinion, the record reveals disputed issues of fact as to each of these matters, and I therefore remand for further proceedings.

the debtor's property held by the debtor's secured creditors and then commenced foreclosure proceedings.

The trustee argues that, despite *Rader*, the doctrine of equitable subordination does not absolutely require a fiduciary relationship between the debtor and the creditor, citing *Sinclair v. Barr (In re Mid–Town Produce Terminal, Inc.)*, 599 F.2d 389 (10th Cir.1979). In *Mid–Town*, the Tenth Circuit rejected the district court's reasoning that a creditor's claim could be subordinated simply on the basis that the creditor was an insider who had loaned money to the debtor. The court remanded for a determination whether there had been some sort of "inequitable conduct" by the creditor, putting the burden on the creditor to show the "inherent fairness" of the transaction. *Id.* at 392–94. *Mid–Town* is not particularly helpful to support the trustee's assertion that no fiduciary relationship is required, since the creditor in that case was clearly an insider and the transaction subject to heightened scrutiny. *Id.* at 392.[5]

Nevertheless, modern case law interpreting § 510(c) and the doctrine of equitable subordination as it applies to non-insider creditors, including financial institutions, indicates that a fiduciary relationship is not a prerequisite to application of the doctrine. The general formula, as stated in *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699–700 (5th Cir.1977), and adopted by many courts, requires that three conditions be met:

> (i) [t]he claimant must have engaged in some type of inequitable conduct[,] (ii) [t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant[, and] (iii) [e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].

While the majority of cases construing this doctrine involve insiders, alter egos, and fiduciaries, courts have subordinated the claim of a creditor where no fiduciary relationship exists. *See, e.g., In re Pat Freeman, Inc.*, 42 B.R. 224, 231 (Bankr.S.D. Ohio 1984) ("The mere absence of a fiduciary, standing alone, does not preclude application of the doctrine of equitable subordination.") However, when that relationship is absent, the party seeking equitable subordination of a claim must demonstrate even more egregious conduct by the creditor.

> The primary distinction between subordinating the claims of insiders versus non-insiders lies in the severity of misconduct required to be shown. Where the party is a noninsider, inequitable conduct must be proven with particularity. The degree of misconduct which the plaintiff must show in the case of a noninsider has been variously described as gross misconduct tantamount to fraud, misrepresentation, overreaching or spoliation.

*Burner v. Security State Bank (In re Burner)*, 109 B.R. 216, 228 (Bankr.W.D. Tex.1989) (citations omitted); *see also Badger Freightways, Inc. v. Continental Ill. Nat'l Bank & Trust (In re Badger Freightways, Inc.)*, 106 B.R. 971, 975–77 (Bankr.N.D.Ill.1989) (noting that a lending institution generally does not owe a fiduciary duty to its borrowing customers and requiring that the objectant show gross misconduct by the institution); *Panelized Technologies, Inc. v. Tesoro Sav. & Loan Ass'n (In re Fargo Fin., Inc.)*, 80 B.R. 247, 253 (Bankr.N.D.Ga.1987) (same).

■ In this case, the trustee simply alleges that Chase's predecessor knew or should have known that the loan transaction would render Dry Wall Supply, Inc. insolvent and that it was made without adequate consideration. There simply is no allegation or evidence that Chase committed gross misconduct by financing the leveraged buy-out of Dry Wall Supply, Inc. Consequently, I affirm the bankruptcy court's ruling dismissing the trustee's equitable subordination claim not because the trustee failed to show a fiduciary relation-

**5.** The parties have not cited nor have I located other cases in which the Tenth Circuit has considered the doctrine of equitable subordination.

ship, but because the allegations against Chase do not approach the level of gross misconduct.

The bankruptcy court's ruling granting summary judgment on the Trustee's fraudulent conveyance claim is REVERSED and REMANDED for additional proceedings. Its decision granting summary judgment on the Trustee's equitable subordination claim is AFFIRMED for the reasons stated above. After the hearing on this matter, the Trustee also moved for leave to file a Statement of Additional Authorities. That motion is GRANTED.