**In the Matter of PRINCETON–NEW YORK INVESTORS, INC. and Seasons Resorts, Inc., Debtors.**

**FIRST UNION NATIONAL BANK, f/k/a First Fidelity Bank, N.A., Appellant,**

**v.**

**Robert P. GIBBONS, Trustee, Appellee.**

**No. CIV. 96–3281.**

United States District Court,
D. New Jersey.

March 13, 1998.

**56**

Stuart J. Glick, Hannoch Weisman, Roseland, NJ, for Appellant.

John A. Adler, Hellring, Lindeman, Goldstein & Siegal, Newark, NJ, for Appellee.

**1.** Defendant Gene Mulvihill has joined in First Union's appeal currently before the Court, and he joins in and supports the arguments raised by ·First Union. (*See* Notice of Joinder in Appeal; 10/17/97 Stern Letter.)

## OPINION

WOLIN, District Judge.

The current case is before the Court on the appeal of appellant First Union National Bank ("First Union"), formerly known as First Fidelity Bank, N.A., from the June 6, 1996 Order (the "Order") entered by the Bankruptcy Court denying First Union's motion to dismiss as to First Union for failure to state a claim.[1] Appellee the Chapter 11 trustee Robert Gibbons (the "Trustee") opposes the appeal. The Court has considered the appeal under Federal Rule of Procedure 78. For the reasons stated herein, First Union's appeal will be denied and the Order affirmed.

## BACKGROUND

The majority of facts underlying this Opinion are set forth in *Matter of Princeton–New York Investors, Inc.*, 199 B.R. 285 (Bankr. D.N.J.1996) (*"Princeton"*). This action arises out of the allegedly fraudulent transfer that occurred between First Union and its debtors. For purposes of the current appeal, the Court sets forth that debtor, Princeton–New York Investors, Inc. ("PNY"), financed a real estate acquisition by a $6,000,000 first mortgage loan from First Union. *See Princeton,* 199 B.R. at 288. On August 12, 1994, PNY and Seasons Resorts, Inc. ("Seasons") (a wholly owned subsidiary of PNY) filed petitions for relief under Chapter 11 of the United States Bankruptcy Code.[2] *See id.* Gibbons was appointed trustee on or about October 6, 1994. *See id.*

The Trustee initiated the current avoidance action on October 6, 1995 against First Union, among others. The Complaint alleges that nearly five years earlier, a golf course owned by debtor PNY was sold to a Japanese investor on November 14, 1990 for $20,000,000. *See id.* As part of that transaction, the Trustee maintains that a First Union mortgage was purportedly paid off with $4 million, but the monies were not applied to an ·outstanding loan that specifically PNY

**2.** The cases were later consolidated for administrative purposes. (*See id.*)

owed to First Union. (*See* First Union's Br. at 3.) Eugene Mulvihill is a defendant in the current action and his role, in part, included that of shareholder and alleged director and chief executive officer of PNY. (*See id.*) He also allegedly personally guaranteed, among others, the aforementioned $6,000,000 first mortgage loan. *See Princeton,* 199 B.R. at 288. The Trustee alleges that on August 15, 1990, First Union agreed with Mulvihill that First Union would apply the proceeds not to reduce PNY's indebtedness to First Union, but rather to reduce the amount of loans First Union made to other Mulvihill corporations. (*See* First Union Br. at 4.)

Count One of the Complaint alleges that this transfer is "avoidable as a fraudulent conveyance pursuant to 11 U.S.C. §§ 544 and 548 and N.J. Stat. Ann. § 25:2–1 *et seq.*, as a transaction with 'actual intent to hinder, delay or defraud either present or future creditors of Princeton.'"[3] (*Id.* (quotation omitted).) In Count Two of the Complaint, the Trustee also seeks to avoid the transaction, under the same aforementioned statutes and sections, as a constructively fraudulent transaction. (*See id.*) The Complaint's remaining counts are unrelated to First Union.

On December 14, 1995, First Union moved to dismiss the Complaint as against First Union for failure to state a claim upon which relief could be granted. The basis for First Union's motion was that 11 U.S.C. § 544 precluded the Trustee from having any cause of action as that section grants a bankruptcy trustee the same rights as an unsecured creditor to avoid transfers under the applicable non-bankruptcy state law. (*See id.* at 4.) Section 546 grants the rights provided by § 544 for a limited period. Neither section creates independent substantive rights. "Thus, [First Union submits,] a trustee acting under § 544 is subject to the same limitations and disabilities applicable to an unse-

cured creditor in an avoidance action under [state] law." (*Id.*)

The Honorable Rosemary Gambardella, Bankruptcy Court Judge, denied First Union's motion by way of a June 6, 1996 Order. The Bankruptcy Court held that the state statute at issue "collides with federal bankruptcy law, including § 546 of the Bankruptcy Code, and, pursuant to the Supremacy Clause, the state law must yield. This Court holds, therefore, that under the facts of this case, N.J. S[tat.] A[nn.] § 25:2–31 is preempted by federal bankruptcy law. Accordingly, the avoidance action commenced by the Trustee … was timely, as it was commenced within the two-year statutory period of § 546 of the Bankruptcy Code." 199 B.R. D.N.J. at 298.

## DISCUSSION

### Jurisdiction

The United States district courts have mandatory jurisdiction to hear appeals from final orders of bankruptcy judges. *See* 28 U.S.C. § 158(a)(1993). If the order is interlocutory, *i.e.*, provisional, the district court has discretion to grant or deny leave to appeal. *See id.*; *Century Glove, Inc. v. First American Bank,* 860 F.2d 94, 97 (3d Cir. 1988) (noting that a district court may review both final and interlocutory orders of the bankruptcy court). On August 20, 1997, this Court granted First Union's motion for leave to file an interlocutory appeal of the Bankruptcy Court's April 25, 1996 Opinion; that Opinion set forth the Bankruptcy Court's findings underlying the June 6, 1996 Order.

### Standard of Review

On appeal, a federal court may set aside a bankruptcy court's findings of fact only if clearly erroneous. *See, e.g., In re Brennan,* 198 B.R. 445, 448 (D.N.J.1996); *In re Sharon Steel Corp.,* 871 F.2d 1217 (3d Cir.1989); *GE Credit Corp. v. Nardulli & Sons, Inc.,* 836

---

3. Section 548, entitled "Fraudulent transfers and obligations" provides, in pertinent part:
   (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily -

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted ....

F.2d 184 (3d Cir.1988). The fact that a reviewing court could have decided the matter differently does not render a finding of fact clearly erroneous. *See* Bank. R. 8013; *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In contrast, a bankruptcy court's legal conclusions or questions of law are subjected to plenary review. *See, e.g., In re Modular Structures, Inc.,* 27 F.3d 72, 76 (3d Cir.1994) (citation omitted); *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3d Cir.1989).

### The Statutes at Issue: The Federal Bankruptcy Code and the New Jersey Fraudulent Transfer Act

The Order from which the appeal is taken concerns the issue, as framed by the Bankruptcy Court, of whether and to what extent the Bankruptcy Code, specifically 11 U.S.C. § 544, as extended by § 546 or § 108 of the Code, preempts the New Jersey Fraudulent Transfer Act ("NJFTA"), specifically N.J. Stat. Ann. § 25:2–31. In support of its motion to dismiss, First Union contends that the NJFTA § 25:2–31 is a complete bar to the avoidance action. Section 25:2–31 is entitled "Extinguishment of cause of action" and provides:

A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought:

a. Under subsection a. of R.S. 25:2–25, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

b. Under subsection b. of R.S. 25:2–25 or subsection a. of R.S. 25:2–27, within four years after the transfer was made or the obligation was incurred; or

c. Under subsection b. of R.S. 25:2–27, within one year after the transfer was made or the obligation was incurred.

N.J. Stat. Ann. tit. 12, § 25:2–31 (1997).

First Union maintains that because the Trustee failed to file the avoidance action on November 14, 1994, four years after the alleged fraudulent transaction occurred, the claim is barred under the New Jersey statute. As set forth *supra,* the Trustee initiated the current case on October 6, 1995. First Union submits that Congress did not intend for the Bankruptcy Code ("the Code") to preempt state law. Thereby, because preemption is not explicit in the sections of the Code at issue in the current case, *see infra* text, preemption is not applicable. Further, First Union contends that the state and federal statutes at issue are not in conflict.

■ The parties do not dispute that the Trustee's claim falls outside the time limitations period established by § 25:2–31. However, the Trustee argues that the Code's limitations period for avoidance actions—two years from the date of the trustee's appointment—applies to this case. The Code's avoidance statute provides, in pertinent part:

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b) (1993). Section 108(a) interrelates with § 544(b) and provides as follows:

(a) If applicable non-bankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C. § 108(a). By its express language, § 108(a) only applies to causes of action that the debtor owned prior to filing the bankruptcy petition. *See, e.g., In re Downtown Investment Club III,* 89 B.R. 59, 65 (9th Cir. BAP 1988) ("Bankruptcy Code § 108(a) refers to pre-filing causes of action belonging to the debtor and not to a cause of action

created by the Bankruptcy Code."). However, when a trustee initiates a cause of action pursuant to § 544(b), he is not acting as the debtor's representative but, rather, is standing in the shoes of an unsecured creditor. *See, e.g., In re O.P.M. Leasing Services, Inc.,* 28 B.R. 740, 760 (Bankr.S.D.N.Y.1983). Section 546(a) of the Code provides for an alternative limitation on a trustee's avoiding powers, setting forth in pertinent part:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> > (1) two years after the appointment of a trustee . . . .

11 U.S.C. § 546(a) (1993). Therefore, the two limitations periods in the Code relate to different causes of action: § 108(a) involves a trustee's actions brought on behalf of the debtor, whereas § 546(a) limits the time a trustee has to commence an avoidance action as representative of the estate. Section 546(a) is applicable to the current case.

Accordingly, the Trustee asserts that he had two years from October 6, 1994, the date of his appointment, to file his avoidance claim.[4] Consequently, the Trustee contends that he is within § 546(a)'s two year limitations period. The Trustee further submits that because the state and federal statutes complement rather than conflict, the Bankruptcy Court's preemption analysis need not be undertaken by this Court.

### A. Preemption Analysis

The United States Supreme Court has provided an analysis of when federal law may preempt a state law. *See California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). The Court instructed:

In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress. Federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. Second, congressional intent to preempt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation . . . .

As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs either because "compliance with both federal and state regulations is a physical impossibility," or because the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* at 280–81, 107 S.Ct. at 689 (citations omitted).

This Circuit has examined the preemption issue specifically in the bankruptcy context, and, much like the United States Supreme Court, has cogently set forth the preemption doctrine's underlying legal principles. *See In re Roach,* 824 F.2d 1370, 1373–74 (3d Cir.1987). Congress is empowered to establish uniform bankruptcy laws throughout the United States under Article 1, § 8 of the Constitution. Thus, "[w]here Congress has chosen to exercise its authority, contrary provisions of state law must accordingly give way." *Id.* at 1373 (citation and internal quo-

---

**4.** First Union's asserts that § 544(b)'s relevant date to void the transaction is the date on which the avoidance action is filed. The Trustee argues that this date "renders that section inconsistent with the logic and structure of the Bankruptcy Code as a whole." (Trustee Br. at 18.) The Court need not resolve this debate as, pursuant to 11 U.S.C. § 541(a), the date of the filing of the bankruptcy petition, although not specified in § 544(b), has been recognized by a number of courts as the date upon which the transaction must be voidable. *See Princeton,* 199 B.R. at 294

(citing, in part, *In re Dry Wall Supply, Inc.,* 111 B.R. 933, 936 (D.Colo.1990) (remaining citations and quotations omitted)).

As an aside, § 541, entitled "Property of the estate," provides that the date of filing is the date on which the bankruptcy estate is created:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held . . . .

11 U.S.C. § 541(a) (1993).

tations omitted). In essence, preemption may be deemed appropriate, although "the usual rule is that congressional intent to preempt will not be inferred lightly."

"Preemption must be either explicit, or compelled due to an unavoidable conflict between the state law and the federal law." *Id.* (citations and internal quotations omitted). Due to the reluctance to assume federal preemption, any analysis should begin with "the basic assumption that Congress did not intend to displace state law." *Id.* (citations and internal quotations omitted). Accordingly, the Third Circuit said:

> Our task is to ascertain and give effect to congressional intent. However, we must approach that task with the realization that the Bankruptcy Code was written with the expectation that it would be applied in the context of state law and that federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests.

*Id.* at 1374. Thus, this Court emphasizes that, under *Roach*, the Third Circuit "adopted a restrained approach to concluding that Congress has intended to preempt state law in the bankruptcy context." *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir.1997).

The Third Circuit's approach to preemption outside the bankruptcy context, when considering areas that state law has traditionally governed, is similarly restrained. The Third Circuit has addressed a conflict between a federal statute of limitations period providing for claims brought under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), and a state nonclaim statute governing administration of decedents' estates. *See Witco Corp. v. Beekhuis*, 38 F.3d 682 (3d Cir.1994). The court declined to preempt the state law, reasoning that the plaintiff could have complied with both statues and that Congress did not intend to overrule the state statute, whether expressly or impliedly. *See id.*

*Witco*'s reasoning has been relied on by other courts in this Circuit. *See, e.g., In re Phar–Mor, Inc. Securities Litigation*, 178 B.R. 692 (W.D.Pa.1995) (addressing whether a state nonclaim statute's one-year statute of limitations barring claims against probate estate was preempted by § 546 of the Code), *aff'd*, 101 F.3d 689 (3d Cir.1996). The *Princeton* court, in addition to both parties on appeal, relied on *Phar–Mor*, which echoed *Witco* in holding that Congress did not expressly or impliedly preempt state law in enacting the Code. *See id.* at 694 (citing, in part, *In re Roach*, 824 F.2d 1370).

The *Phar–Mor* court implemented the preemption analysis set forth in detail *supra*, finding preemption to be "inappropriate because [the court could not] discern a 'clear and manifest' intention on the part of Congress to override the state's strong and traditional interest in regulating the probate matters of its citizens." *Id.* at 696. The *Princeton* court noted as significant that *Phar–Mor*, in dicta, indicated that it would likely have followed the *In re Dry Wall Supply, Inc.*, decision, 111 B.R. 933 (D.Colo. 1990) (holding that a state statute of limitations was preempted by 11 U.S.C. § 546(a); although trustee initiated fraudulent conveyance action after time set by state law limitations period, claim was not time barred where debtor filed for bankruptcy before state law limitations period ran and trustee commenced action within two years after his appointment) had a state statute of limitations been implicated. *See Princeton*, 199 B.R. at 296.

In the current case, neither *Guerra*'s first nor second grounds for preemption of state law are present. Congress has not expressly preempted state law in enacting § 544(b), nor can such subordination be inferred.

■ The Court next turns to the third basis for state law preemption—a determination of whether a state law conflicts with federal law. The inquiry is as follows: (1) is it possible to comply with both laws, and (2) does the state law stand as an obstacle to Congress' intent? *See Guerra*, 479 U.S. at 281, 107 S.Ct. at 689–90.

■ Before making this determination, the Court is mindful that while preemption may be deemed appropriate, federal preemption is not favored, particularly "in areas of law

traditionally dominated by the individual states." *Witco Corp.*, 38 F.3d at 687; *see English v. General Electric Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). A presumption against preemption of state law exists in the current case because the property of the bankruptcy estate traditionally has been the states' concern. *See, e.g., Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."[5]); *see also Nobelman v. American Sav. Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has left the determination of property rights in the assets of a bankrupt's estate to state law.") (citation and internal quotations omitted).

### B. The Trustee Could Have Complied with Both the NJFTA and the Code

■ Returning to the determination of whether § 25:2–31 of the NJFTA conflicts with §§ 544(b) and 546(a) of the Code, the third basis for subordination of state law, the Court's analysis begins with an inquiry of whether compliance with both statutes was feasible. The Bankruptcy Court found that the Trustee could have complied with both § 546 of the Code and § 25:2–31 of the NJFTA. *See Princeton*, 199 B.R. at 297. After plenary review of this issue, this Court is in agreement.

First Union argues that the current action was extinguished four years after the transaction occurred, or November 14, 1994. Accordingly, under state law, the Trustee had approximately one month after his appointment within which to bring the present action. Further, the Trustee had ample time to initiate the avoidance action under the two-year period provided by the Code. Conse-

quently, the Court will hold that the state nonclaim statute did not conflict with the federal statute of limitations.

### C. The New Jersey Statute of Repose Impedes the Accomplishment and Execution of Congressional Objectives

Lastly, the Court turns to the second and final inquiry required in determining if the statutes are in conflict: whether § 25:2–31 of the NJFTA stands as an obstacle to congressional intent. The Court holds that Congress' objectives in enacting the Bankruptcy Code are impeded by the state statute of repose.

*Collier on Bankruptcy* explains the interrelationship between state law statutes of limitation, § 544(b), and § 546(a):

> Since the trustee, under section 544(b), will often be compelled to stand on the rights of a single qualified creditor, it is to be expected that questions of estoppel and the effect of the running of statutes of limitations will arise. The general rule is that section 544(b) confers upon the trustee no greater rights of avoidance than the creditor himself would have if he were asserting invalidity on his own behalf. Consequently, if the creditor is deemed estopped to recover upon his claim, or is barred from recovery because of the running of a statute of limitations prior to the commencement of the case, the trustee is likewise rendered impotent. Once the case has commenced, section 546(a) ... specifies the time within which the trustee must act under section 544(b).

*In re Dry Wall*, 111 B.R. at 936 (quoting 4 Collier on Bankruptcy ¶ 544.03[2] at 544–21 to–22 (L. King 15th ed.1989)).

Collier's interpretation of §§ 544(b) and 546(a) permits the trustee to bring an avoidance action as long as § 546(a)'s provisions

---

**5.** The Court then continued, instructing that:

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and

federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.

*Butner v. United States*, 440 U.S. at 55, 99 S.Ct. at 918 (citations and internal quotations omitted).

are complied with and as long as the state law statute of limitations has not run before the debtor filed for bankruptcy. This view has been followed by other courts. *See, e.g., In re Dry Wall Supply, Inc.,* 111 B.R. at 936 (citations to other courts, but not including the Third Circuit, omitted).

■ The preceding analysis addresses state statutes of limitations. However, in the instant case, the Court will hold that the state law in question is a statute of repose. *Princeton* provides a cogent discussion of the difference between a statute "which extinguishes a cause of action (also known as a 'statute of repose') and a procedural statute of limitations":

> A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. *Goad v. Celotex Corp.,* 831 F.2d 508, 511 (4th Cir.1987), *cert. denied,* 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906, (1988). A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time. *Id.* Statutes of limitations are motivated by considerations of fairness to defendants and are intended to encourage prompt resolution of disputes by providing a simple procedural mechanism to dispose of stale claims. *Harig v. Johns–Manville Products Corp.,* 284 Md. 70, 75, 394 A.2d 299 (1978). Statutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists. *Whiting–Turner,* 304 Md. at 394–50, 499 A.2d 178. Thus, as a general rule, a statute of limitations is tolled by a defendant's fraudulent concealment of a plaintiff's injury because it would be inequitable to allow a defendant to use a statute intended as a device of fairness to perpetrate a fraud. Conversely, a statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck

by the legislative body. *Knox v. AC & S, Inc.,* 690 F.Supp. 752, 759 (S.D.Ind.1988).

199 B.R. at 293 (quoting *First United Methodist Church v. United States Gypsum Co.,* 882 F.2d 862, 865–66 (4th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990); *see also ... United States v. Vellalos,* 780 F.Supp. 705, 708 (D.Haw.1992) (federal government bound by state statute of repose); *Marshall v. Geo. M. Brewster & Son, Inc.,* 37 N.J. 176, 181, 180 A.2d 129 (1962)). In essence, a statute of limitations serves to protect a party from stale claims while a statute of repose implicates not only the state's traditional right to regulate property, but also the right to determine its citizens' capacity to be sued.

Under the above analysis, the Court deems N.J. Stat. Ann. § 25:2–31 to be a statute of repose and, in so doing, is in accord with the *Princeton* court's reasoning: § 25:2–31 "embodies the most distinctive characteristic of a statute of repose, the barring of the right to bring an action rather than the remedy prescribed." 199 B.R. at 293 n. 4 (citing to the New Jersey Senate Labor, Industry and Profession's Committee Statement Report which accompanied the enactment of the NJFTA). The Court notes that neither the Trustee nor First Union have contested the lower court's finding that § 25:2–31 is a statute of repose.

In a case facially on point with the current case and relied upon by First Union, in *Witco,* discussed *supra* at 60, the Third Circuit declined to subordinate a state statute of repose to a federal statute of limitations. In reaching this decision, the court emphasized that the state statute was not "merely a general statute of limitations, but instead was characterized as a 'nonclaim' statute." 38 F.3d at 690. Accordingly, the court reasoned that Congress could not have implicitly intended to preempt the state nonclaim statute. *See id.* at 689. Further, Congress narrowed CERCLA liability by creating an exception to the federal scheme, thereby rendering illogical a conclusion that Congress impliedly preempted state probate law to expand a CERCLA claimant's right to seek contribution. *See id.* No such exception exists in § 544(b).

However, *Witco* is markedly distinguished from the instant appeal. Significantly, preemption was found to be inherently unworkable in *Witco* as CERCLA's statute of limitations was not triggered, potentially, until long after settlement of the estate. *See id.* In contrast, in the current case, the statute of limitations under the Code is triggered as soon as a trustee is appointed; any claim must be brought within two years of that appointment.

First Union also relies upon cases not only involving the application of a general state statute of limitations and § 546(a), *see, e.g., In re Dry Wall,* 111 B.R. 933, but also upon cases factually distinguishable from the current case. *See, e.g., Integrated Solutions, Inc. v. Service Support Specialties,* 124 F.3d 487 (3d Cir.1997).[6] *Integrated Solutions* involved the issue of whether a federal bankruptcy law preempted a New Jersey statute prohibiting the assignment of prejudgment tort claims. More particularly, the case implicated §§ 704(1) and 363(b)(1) of the Code.[7]

The Third Circuit found congressional intent to preempt state law restrictions on transferring property clearly lacking. The court based its finding: (1) upon the lack of express authorization in either section, (2) legislative history that would not even raise

such an inference; and (3) in recognition of the explicit language used by Congress in other provisions of the Code when it intends to displace state nonbankruptcy law.[8] *See Integrated Solutions, Inc.,* 124 F.3d at 493.

In further support of its arguments, First Union emphasizes the force and weight of the state statute of repose at issue by raising the Uniform Fraudulent Transfer Act ("UFTA"),[9] which was adopted in New Jersey as § 25:2–31 of the NJFTA. (*See* First Union Br. at 14.) The UFTA's extinguishment provision bans the entire cause of action once the statute of limitations has lapsed. The purpose of this section "is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy .... The section rejects the rule applied in the *United States v. Gleneagles Inv. Co., Inc.,* 565 F.Supp. 556, 583 (M.D.Pa.1983) (state statute of limitations held not to apply to action by the United States based on Uniform Fraudulent Conveyance Act)." *United States v. Vellalos,* 780 F.Supp. 705, 707 (D.Haw.1992) (quoting Unif. Fraudulent Transfer Act § 9, 7A U.L.A. 665–66 (1984) (Commentary)).

In response, the Trustee notes that at a session of the "Committee of the Whole" of the National Conference of Commissioners of

---

**6.** First Union also relies on persuasive authority, citing to *Intili v. Digiorgio,* 300 N.J.Super. 652, 693 A.2d 573 (Ch.Div.1997) (holding that four-year time limit on judgment creditor's ability to challenge alleged fraudulent conveyance under the NJFTA was not equitably tolled); judgment creditor retained "creditor" status under the NJFTA, "with ability to assert NJFTA cause of action, even after default judgment was vacated." (*See* First Union Br. at 17.) However, *Intili* did not implicate the Code and, thus, is incongruous with the instant appeal.

**7.** Section 704 sets forth the trustee's duties, and subsection (1) instructs the trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest ...." 11 U.S.C. § 704(1). Somewhat similarly, § 363 defines the permissible use, sale, or lease of estate property, with subsection (b)(1) specifying that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

**8.** The court set forth a number of Code sections to exemplify explicit preemption. *See Integrated*

*Solutions,* 124 F.3d at 493 (citing to 11 U.S.C. § 1123(a)) ("Notwithstanding any otherwise applicable nonbankruptcy law, a [reorganization] plan shall ..."); 11 U.S.C. § 541(c)(1) ("[A]n interest of the debtor in property becomes property of the estate ... notwithstanding any provision in ... applicable nonbankruptcy law (A) that restricts or conditions transfer of such interest by the debtor ..."); 11 U.S.C. § 728(b) ("Notwithstanding any State or local law imposing a tax on or measured by income, the trustee shall make tax returns of income .. only if [the] estate or corporation has net taxable income for the entire period after the order for relief under this chapter during which the case is pending."); 11 U.S.C. § 363(a) ("Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section ... notwithstanding any provision in ... applicable law that is conditioned on the insolvency or financial condition of the debtor ...").

**9.** The UFTA's predecessor was the Uniform Fraudulent Conveyance Act ("UFCA"). (*See* First Union Br. at 18.)

Uniform State Laws concerning the UFTA, the Reporter to the Committee stated: "If there is a liquidation in bankruptcy—of course, bankruptcy supersedes all of this. If there is a filing of a petition of bankruptcy, all of the remedies of this statute are suspended." (Adler Cert. Exh. A (excerpts from a 1984 Committee of the Whole session) at 111.) However, the Court finds that this statement is not wholly persuasive as PNY filed for reorganization under Chapter 11 and, also, the committee excerpt addresses suspension of remedies while § 25:2–31 concerns extinguishment of rights.

Nevertheless, the Court is not particularly persuaded by First Union's arguments. In accordance with the UFTA, § 25:2–31 of the NJFTA bans the entire avoidance cause of action, both as to rights and remedies. In enacting the Code, Congress expressly incorporated Fed.R.Civ.P. 17(b) into the bankruptcy scheme.[10] Thus, following Rule 17(b), which provides in pertinent part: "[t]he capacity of an individual, other than one acting in a representative capacity, to sue or to be sued shall be determined by the law of the individual's domicile," the Court looks to New Jersey law to determine whether the Trustee can assert his claim against First Union after the statute of limitations under that state law has run. However, the state law does not appear to contemplate the possibility of a Chapter 11 reorganization. The Court is mindful that the Trustee is seeking to invoke a right that may go to an area of law traditionally within the province of the states. Yet, the right to avoid a fraudulent transfer in the bankruptcy context was not created exclusively by a state statute.

An explicit goal of the New Jersey legislature in enacting NJFTA was to extinguish the liability created by *that statute* if the avoidance action was not timely. (*See* First Union Br. at 18 (emphasis added).) Sections 544(b) and 546(a) of the Code create and limit the Trustee's right to avoid fraudulent transfers relating to the bankrupt estate. Section 546(a) is not rendered superfluous upon expiration of a state statute of repose. And the Court reiterates that § 25:2–31 does not appear to have contemplated a proceed-

ing in bankruptcy. In contrast, the Code contemplated existence of other law in the avoidance context. *See* 11 U.S.C. § 544(b) ("The trustee may avoid a transfer ... that is voidable under applicable law ....").

First Union submits that this language expressly empowers a Trustee to resort to such law under the Code, thereby rendering a preemption argument groundless. Further, First Union maintains that the Code and the NJFTA do not conflict when a trustee's power of avoidance under § 544(b) is expressly limited to that state law. (*See* First Union Reply at 2.) However, First Union provides little support for these submissions and, in light of the existing case law, the Court deems First Union's arguments facially appealing but without merit. The suggestion that NJFTA controls administration of the bankruptcy estate is illogical. Indeed, § 546(a) expressly references § 544. *Cf. Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979) (finding no provision in the Bankruptcy Act which pre-empted state law with respect to the rights of a mortgagee to rents collected during the bankruptcy of a mortgagor; "[t]he constitutional authority of Congress to establish 'uniform laws on the subject of Bankruptcies throughout the United States' would clearly encompass a federal statute defining the mortgagee's interest in the rents and profits earned by property in a bankruptcy estate. *But Congress has not chosen to exercise its power to fashion any such rule.*") (emphasis added). Thereby, while § 544(b) does not explicitly preempt state law, inclusion of § 546(a) in the Code evidences Congress' intent to subordinate state law restrictions.

This Court concludes that actions brought under § 544 are governed by § 546(a). Section 546(a) expressly applies only to actions brought under §§ 544, 545, 547, 548, or 553. The Code, while utilizing state substantive law, creates these avoiding powers. This is not a cause of action available to a trustee outside a bankruptcy court. *See In re Mahoney, Trocki & Assocs., Inc.,* 111 B.R. 914, 917–18 (Bankr.S.D.Cal.1990). "The fraudulent transfer action under § 544(b) is not an

10. Bankruptcy Rule 7017 applies Fed.R.Civ.P. 17    in adversary proceedings.

action to assert an independent state law created right on behalf of a trustee which was and is cognizable without the filing of a bankruptcy petition. This right, on behalf of a trustee ... is clearly the creation of the bankruptcy code." *Id.* at 918. As set forth above, the Trustee could have complied with the NJFTA. With that determination, the operation of state law ends. If the Trustee could have brought the state fraudulent conveyance action—the alleged transaction occurred on November 14, 1990—immediately prior to the bankruptcy petition—filed on August 12, 1994—then § 546(a) sets forth a specific time within which that action can be brought pursuant to § 544. *See id.*

■ Further, the ability of the trustee to recover property for the bankrupt estate's benefit, a congressional goal intended to be accomplished by the Code, could be diminished by application of a shorter statute of limitations. In the absence of § 546(a)'s two-year period, a trustee may be barred from asserting potential claims if the trustee fails to immediately determine what potential claims may be brought for the recovery of assets if the statute of limitations runs early in the bankruptcy, or potentially even before appointment of the trustee. *See In re Dry Wall Supply, Inc.,* 111 B.R. at 937. "Such would contravene the broad powers Congress has granted to the trustee under §§ 544, 547 and 548 of the Code to recover property for the benefit of the estate." *Id.* This Court recognizes, as did the *Princeton* court, that § 546(a) of the Code "in essence gives the trustee some breathing room to determine what claims to assert under § 544." *Princeton,* 199 B.R. at 297 (quoting *In re Dry Wall Supply, Inc.,* 111 B.R. 933, 936–37 (D.Colo. 1990).) The *Princeton* court found that a trustee's power to avoid pre-petition transfers critical to the implementation of "the full purposes and objectives of Congress in enacting the Bankruptcy Code." *Id.* The lower court reasoned that, in addition to § 546 providing to trustees a time to determine claims to raise under § 546:

Section 108(a) also grants the trustee time to evaluate claims held by the estate and to sort out the affairs of the estate in an orderly fashion. *See* H. Rep. No. 595, 95th Cong., 1st Sess. 318 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6275. This reprieve from the statute of limitations clock is especially important where the management of a business, in the period immediately prior to bankruptcy, may not have adequate incentives to bring lawsuits in a timely fashion where the recovery is remote either in time or certainty or the prospective benefits would accrue to creditors rather than shareholders. Section 108(a) allows the trustee to counteract the possibility that management was not adequately serving the creditors' interests in the period before filing.

*Id.*

First Union submits that Congress recognized that the Code's goals would not be accomplished without encountering some difficulty. (*See* First Union Br. at 10.) However, to endorse First Union's position would result in more than a difficulty. It would have the effect of stripping Congress of its authority to execute and accomplish the Code's objectives. (*Cf. Phar–Mor* at 694–95 (determining that § 546 did not preempt a state nonclaim statute in the absence of an actual conflict between the state and federal laws, because compliance with both statutes was possible, and because the state statute did not impede congressional goals)). Consequently, the conclusion that Congress intended to preempt state law restrictions imposed on property of the bankrupt estate in the current context is unavoidable. Any other result would place the state statute in tension with Congress' goals in enacting the Code. Permitting operation of New Jersey law will cause significant problems in actual bankruptcy practice, as recognized by the *Princeton* court.

Further, First Union has not set forth a state interest which would outweigh congressional objectives for enacting the Code. The Court is not convinced that § 25:2–31's status as a statute of repose, alone, is sufficient to establish an overriding state public policy requiring subordination of the Code's goals for §§ 544(b) and 546(a). After carefully weighing the goals of the Code, namely for

# 66

the Trustee to maximize the bankruptcy estate for creditors' benefit, with the New Jersey legislature's purposes for enacting the statute of repose, pursuant to the Supremacy Clause [11] and substantive countervailing federal law considerations, the state statute must give way. Section 546(a)'s wording is clear. It applies to those actions brought under § 544. If § 546(a)'s plain meaning has led to unworkable results, it is for Congress and not the courts to remedy that problem. Consequently, the Trustee's fraudulent avoidance action is deemed timely under § 546. Thus, First Union's motion to dismiss will be denied and the Bankruptcy Court's Order affirmed.

## CONCLUSION

For the foregoing reasons, the Court will hold that First Union's appeal of the Bankruptcy Court's June 6, 1996 Order denying First Union's motion to dismiss as to First Union will be denied and the Order affirmed.

An appropriate Order is attached.

## *ORDER*

In accordance with the Court's Opinion filed herewith

ORDERED that appellant First Union National Bank's appeal of the Bankruptcy Court's June 6, 1996 Order denying First Union's motion to dismiss as to First Union is denied and the Order affirmed.

---

11. "Acts of the State Legislatures ... [which] *interfere with* or are contrary to the laws of Congress, made in pursuance of the constitution are invalid under the Supremacy Clause." *Gibbons v. Ogden,* 9 Wheat. 1, 6 L.Ed. 23 (1824) (emphasis added).